PLANNED PARENTHOOD OF MISSOU-LA INC. and Intermountain Planned Parenthood, Inc., on behalf of themselves and the Medicaid-eligible women of the State of Montana to whom they provide health care, Plaintiffs,

v.

Peter S. BLOUKE, Director of the Montana Department of Social and Rehabilitation Services, in his official capacity, and Marc F. Racicot, Governor of the State of Montana, in his official capacity, Defendants.

No. CV–94–028–GF.

United States District Court,
D. Montana,
Great Falls Division.

July 19, 1994.

Joel E. Guthals, Wright, Tolliver & Guthals, PC, Billings, MT, Robert J. Phillips, Phillips & Williams, Missoula, MT, Roger K. Evans, Planned Parenthood Federation of America, New York City, for plaintiffs.

Russell E. Cater, Montana Dept. of Social & Rehabilitation Services, Helena, MT, for defendants.

### MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

The issue presented in this action for declaratory and injunctive relief is whether the State of Montana, as a participant in the Medicaid program established under Title XIX of the Social Security Act (42 U.S.C. §§ 1396 *et seq.*), must fund the costs associated with non-therapeutic abortions terminating pregnancies resulting from an act of rape or incest.[1]

### I.

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, establishes the Medicaid program; a program under which states may receive federal financial assistance for the purpose of providing medical assistance to needy persons. "Participation in the Medicaid program is entirely optional [but] once a State elects to participate, it must comply with the requirements of Title XIX." *Harris v. McRae,* 448 U.S. 297, 302, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Title XIX re-

---

1. The parties have filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56, both acknowledging that no genuine issues of material fact exist which would preclude the entry of summary judgment.

138

quires participating States to provide financial assistance to qualified individuals in five general categories of medical treatment. 42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(1)–(5).[2] Although a participating State need not "provide funding for all medical treatment falling within the five general categories, [Title XIX] does require that [a] State Medicaid pla[n] establish 'reasonable standards ... for determining ... the extent of medical assistance under the plan which ... are consistent with the objectives of [Title XIX].' 42 U.S.C. § 1396a(a)(17)." *Beal v. Doe*, 432 U.S. 438, 441, 97 S.Ct. 2366, 2369, 53 L.Ed.2d 464 (1977).

Since 1976, Congress has chosen to limit the use of federal funds to reimburse the cost of abortions under the Medicaid program except under certain specified circumstances, through an amendment to the annual appropriations bill for the Department of Health and Human Services[3] or by a joint resolution. The congressional enactments embodying these funding restrictions are commonly referred to as the "Hyde Amendments."[4] The most recent version of this spending restriction is found in section 509 of the Departments of Labor, Health and Human Services, and Education, and Related Agen-

cies' Appropriations Act, 1993, 107 Stat. 1113, which provides as follows:

> None of the funds appropriated under this Act shall be expended for any abortion except when it is made known to the Federal entity or official to which funds are appropriated under this Act, that such procedure is necessary to save the life of the mother or that the pregnancy is the result of an act of rape or incest.

The plaintiffs[5] (collectively referred to as Planned Parenthood) contend the 1993 Hyde Amendment effected a substantive modification of Title XIX; a modification that mandates participating States, including Montana, to provide funding for abortions terminating pregnancies resulting from an act of rape or incest. The plaintiffs filed the present action seeking a declaration that Montana Administrative Rule 46.12.2002(e), which effectively prohibits Medicaid payment for abortion related services unless the abortion was necessary to protect the life of the mother, contravenes the mandate of Title XIX, as modified by the 1993 Hyde Amendment, and is, accordingly, invalid under the Supremacy Clause, Article VI, Clause 2, of the Federal Constitution.[6] The plaintiffs bring the action under 42 U.S.C. § 1983, invoking the federal

2. Title XIX requires that a participating state agree to provide financial assistance to the "categorically needy" with respect to the following five broad categories of medical treatment: (1) inpatient hospital services, (2) outpatient hospital services, (3) other laboratory and x-ray services, (4) skilled nursing facility services, periodic screening and diagnosis of children, and family planning services, and (5) services of physicians. 42 U.S.C. § 1396d(a)(1)–(5).

3. The Department of Health and Human Services was formerly a part of the Department of Health, Education and Welfare.

4. The original Hyde Amendment, enacted in 1976 as a rider to the 1977 Appropriations Bill for the Department of Health, Education and Welfare, limited funding to abortions where "the life of the mother would be endangered if the fetus was carried to term." P.L. 94–439, § 209, 90 Stat. 1434 (1976). While differing versions of the Hyde Amendment were adopted between 1976 and 1982, the Hyde Amendments adopted from 1982 through 1993 limited federal funding of abortion services to those situations where the abortion was deemed medically necessary to protect the life of the mother. The 1993 version of

the Hyde Amendment once again expanded federal funding to include abortions for victims of rape and incest; a change which spawned the present controversy.

5. The plaintiffs, Planned Parenthood of Missoula, Intermountain Planned Parenthood, Inc. and Yellowstone Valley Women's Clinic, Inc., are entities that provide reproductive health care services, including abortions, to women, including many eligible for Medicaid, at facilities located in Billings, Great Falls, Helena and Missoula, Montana.

6. Montana Administrative Rule 46.12.2002(e) provides:

> (e) Physician services for abortion procedures must meet the following requirements in order to receive medicaid payment:
> (i) the physician has found, and certified in writing, that on the basis of his/her professional judgment, the life of the mother would be endangered if the fetus were carried to term. The certification must contain the name and address of the patient and must be on or attached to the medicaid claim.

question jurisdiction of this court. 28 U.S.C. § 1331.

The State of Montana, through Mark F. Racicot, Governor of the State of Montana, and Peter S. Blouke, Director of the Montana Department of Social and Rehabilitation Services, resist the plaintiffs' suggestion that the 1993 Hyde Amendment imposes a substantive obligation upon the State of Montana to provide Medicaid funding for abortions terminating pregnancies resulting from an act of rape or incest. Rather than mandating participating states to fund these abortions, the 1993 Hyde Amendment, in the opinion of the State of Montana, was merely intended to expand federal funding of abortion services to include abortions for victims of rape and incest. The 1993 Hyde Amendment, the State argues, was not intended to preempt state law, but was intended as a grant of authority to a participating state to use, in a manner it deemed appropriate, federal monies to fund abortion services related to the termination of a pregnancy resulting from an act of rape or incest. The State of Montana relies upon the language of 42 U.S.C. § 1396a(a)(17), which confers "broad discretion on the [participating states] to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1977).

## II.

Title XIX establishes a system of "cooperative federalism" whereby the "Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons". *Harris v. McRae,* 448 U.S. at 308, 100 S.Ct. at 2683. In return, a "State agrees to establish a medicaid plan that satisfies the requirements of Title XIX, which include several mandatory categories of health services...." *Id.*

The Supreme Court has, of course, had occasion to address numerous issues relating to a participating State's obligation to fund abortions. For instance, in *Beal v. Doe,* 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977), the Court addressed the following question: "Whether Title XIX requires [a participating State] to fund under its Medicaid program the cost of all *abortions that are permissible under State law.*" 432 U.S. at 443–44, 97 S.Ct. at 2370 (emphasis in original). Emphasizing the question presented was one of statutory construction, the Court held that the decision of a participating State not to extend Medicaid coverage to nontherapeutic abortions is not inconsistent with Title XIX. 432 U.S. at 447, 97 S.Ct. at 2372. The Court hastened to note, however, that "the Federal statute leaves a State free to provide such coverage if it so desires." 432 U.S. at 447, 97 S.Ct. at 2372.[7]

Subsequently, in *Harris v. McRae,* the Court held, "Title XIX does not obligate a participating State to pay for those medical services for which federal reimbursement is unavailable." 448 U.S. at 309, 100 S.Ct. at 2684. Accordingly, "Title XIX does not require a participating State to pay for those medically necessary abortions for which federal reimbursement is unavailable under the Hyde Amendment." 448 U.S. at 310–311, 100 S.Ct. at 2685.

The Court in *Harris v. McRae* did not inquire whether the Hyde Amendments are properly construed as effecting a substantive amendment to Title XIX. 448 U.S. at 310, n. 14, 100 S.Ct. at 2684, n. 14. Rather, in reaching its conclusion, the Court recognized that "Congress has always assumed that a participating State would not be required to fund medically necessary abortions once federal funding was withdrawn pursuant to the Hyde Amendment." 448 U.S. at 310, 100 S.Ct. at 2684–85.

The issue presented in this case is somewhat the inverse of the issues presented in *Harris v. McRae* and *Beal v. Doe,* being

---

**7.** The Court explained the limited nature of its decision stating as follows:

In these cases we have held merely that (i) the provisions of the Social Security Act do not *require* a State, as a condition of participation,

to include the funding of elective abortions in its Medicaid program; and (ii) the Equal Protection Clause does not require a State that elects to fund expenses incident to child birth also to provide funding for elective abortions. 432 U.S. at 447–48, n. 15, 97 S.Ct. at 2372, n. 15.

directed to the issue of whether a State, as a condition of participation in the Medicaid program, must fund any abortion for which federal reimbursement *is* available. The issue is one of statutory construction and requires the court to first decide whether it must make inquiry into the question left open by the Court in *Harris, i.e.,* whether the Hyde Amendment is properly construed as substantively altering the obligations of the participating States under Title XIX by requiring those States to fund abortions terminating pregnancies resulting from an act of rape or incest.

In seeking to convince the court that the 1993 Hyde Amendment constitutes a substantive amendment to Title XIX, the plaintiffs direct the court's attention to the decision of the Third Circuit in *Roe v. Casey,* 623 F.2d 829 (3rd Cir.1980), where the court held that the Hyde Amendment in effect for the fiscal year 1980 constituted a substantive modification of Title XIX.[8] Ironically enough, the substantive change recognized by the court as having been effected by the Hyde Amendment, operated to reduce the participating States' substantive obligations to fund abortions to only those abortions specified in the Hyde Amendment. 623 F.2d at 834–836. In explanation of its holding, the court observed that "Title XIX, [as modified

by the Hyde Amendment] requires the [participating] States to fund abortions in two categories: where the mother is endangered and where the pregnancy was the result of rape or incest." 623 F.2d at 836.[9] In sum, the court in *Casey* viewed the Hyde Amendment as not merely a limitation upon the use of federal funds, but as a substantive modification of Title XIX that *required* participating States to fund abortions in the categories expressly identified in the text of the amendment itself. 623 F.2d at 836–837.[10]

The State of Montana asks the court to reject the rationale espoused in *Casey.* In the opinion of the State of Montana, the reasoning of *Casey,* as well as the circuit courts who have reached similar conclusions, cannot withstand analysis in light of the Supreme Court's decision in *Harris v. McRae, supra.* The State of Montana, however, fails to present a cogent argument explaining how the holding in *Harris* undermines the rationale of *Casey.* The conclusion reached by the Court in *Harris v. McRae* is that Congress, in enacting Title XIX, did not intend a participating State to assume a unilateral funding obligation for any health service in an approved Medicaid plan, does not resolve the issue before this court. *Harris v. McRae,* 448 U.S. at 309, 100 S.Ct. at 2684.

**8.** The reasoning of the court in *Casey* is in accord with the reasoning of the other circuit courts that have dealt with the issue of whether the Hyde Amendments were properly construed as effecting a substantive change to Title XIX. 623 F.2d at 831, n. 5, *citing, Hodgson v. Board of County Commissioners,* 614 F.2d 601 (8th Cir.1980); *Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir. 1979), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979); *Zbaraz v. Quern,* 596 F.2d 196 (7th Cir.1979).

**9.** The 1979 Hyde Amendment at issue in *Casey* provided as follows:

Notwithstanding any other provision of this joint resolution . . . , none of the funds provided by this joint resolution shall be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest, when such rape or incest has been reported promptly to a law enforcement agent or public health service; . . . .

Under challenge in *Casey,* was legislation of the State of Pennsylvania which prohibited the State

from "pay[ing] for, mak[ing] reimbursement for, or otherwise . . . support[ing] the performance of any abortion except where the abortion is certified in writing by a physician to be necessary to save the life of the mother." 623 F.2d at 831, *citing,* 1978 Pa.Law 16A. The plaintiffs sought a judg. 1ent declaring the referenced statutes invalid and enjoining state officials from refusing to fund medically necessary abortions for women whose pregnancies were not life endangering. 623 F.2d at 832.

**10.** In *Casey,* the court deemed it appropriate to resort to the legislative history attendant to the Hyde Amendment under scrutiny in order to glean congressional intent. 623 F.2d at 835. Resort to the pertinent legislative history, the court reasoned, was appropriate since the "literal language of the Hyde Amendment, which is limited to expenditure of federal funds, seems at odds with the entire structure of the Medicaid statute. . . ." 623 F.2d at 835. Based upon its analysis of the congressional debates preceding the enactment of the various Hyde Amendments, the court concluded that Congress intended to "alter the scope of Title XIX to restrict the funding of abortions." 623 F.2d at 835.

It is important to reiterate that the Court in *Harris v. McRae* expressly reserved the issue of whether the Hyde Amendment is a substantive modification of Title XIX. 448 U.S. at 310, n. 14, 100 S.Ct. at 2684, n. 14.

While I would be inclined to agree with those federal courts that have concluded the 1993 Hyde Amendment is properly construed as having effected a substantive modification of Title XIX, I need not address that issue in order to resolve the issue before the court.

■ Title XIX requires that the Medicaid plan of a participating State establish "reasonable standards ... for determining ... the extent of medical assistance under the plan which ... are consistent with the objectives of [Title XIX]." 42 U.S.C. § 1396a(a)(17). "This language confers broad discretion on the States to adopt standards for determining the extent of medical assistance requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal v. Doe*, 432 U.S. at 444, 97 S.Ct. at 2371. I perceive the determinative question in the present case to be whether the decision of the State of Montana to limit funding of abortions terminating pregnancies resulting from an act of rape or incest to those situations where the "life of the mother would be endangered if the fetus were carried to term", *see*, Mont.Adm.Reg. 46.12.2002, is unreasonable because it is inconsistent with the objectives of Title XIX. I find that the State of Montana's refusal to extend Medicaid coverage to abortions terminating pregnancies resulting from an act of rape or incest is unreasonable and, accordingly, inconsistent with the mandate of Title XIX.

■ The primary objective of Title XIX is to "enable each State, as far as practicable, to furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services." *Beal v. Doe*, 432 U.S. at 444, 97 S.Ct. at 2371, *citing*, 42 U.S.C. §§ 1396, 1396a(a)(10)(C) (1970 Ed.Supp.V). The de-

termination of whether an abortion is medically necessary is a matter within the attending physician's medical judgment concerning his patient's needs. *See, Beal v. Doe*, 432 U.S. at 445, n. 9, 97 S.Ct. at 2371, n. 9. "Whether 'an abortion is necessary' is a professional judgment that ... may be exercised in the light of all factors—physical, emotional, psychological, familial, and the woman's age—relative to the well-being of the patient. All these factors may relate to health. This allows the attending physician the room he needs to make his best medical judgment." *Doe v. Bolton*, 410 U.S. 179, 192, 93 S.Ct. 739, 747, 35 L.Ed.2d 201 (1973).

The restriction on Medicaid coverage embodied in the Montana administrative regulation under scrutiny directly interferes with the attending physician's professional judgment concerning appropriate treatment for his or her patient. Unlike the Pennsylvania regulation at issue in *Beal v. Doe*, the Montana regulation does not establish a definition of medical necessity "broad enough to encompass the factors specified in *Bolton*." *Beal v. Doe*, 432 U.S. at 441, n. 3, 97 S.Ct. at 2369, n. 3. Rather, the regulation directly interferes with an attending physician's initial determination regarding medical necessity and is, accordingly, unreasonable.

My interpretation of Title XIX is supported by the Supreme Court's observation that "serious statutory questions might be presented if a State Medicaid plan excluded necessary medical treatment from its coverage...." *Beal v. Doe*, 432 U.S. at 444, 97 S.Ct. at 2371. Additional support for this interpretation is provided by the fact the Department of Health and Human Services, the agency charged with the administration of Title XIX, has taken the position that abortions terminating pregnancies resulting from an act of rape or incest are to be considered as falling within the scope of services that are medically necessary within the meaning of Title XIX.[11] As the Supreme Court acknowledged in *Beal v. Doe*, a court

---

11. The referenced conclusion of the Department of Health and Human Services is predicated upon that agency's determination that the 1993 Hyde Amendment effected a substantive modification to Title XIX. While this court finds it

unnecessary to reach that precise issue, the agency's determination that abortions terminating pregnancies resulting from an act of rape or incest are "medically necessary" is compelling.

must be mindful that the construction of a statute by the agency charged with the statute's execution should be followed unless there are compelling indications to the contrary. 432 U.S. at 447, 97 S.Ct. at 2372, *quoting, New York Dept. of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 2516–17, 37 L.Ed.2d 688 (1973).

Finally, I remain mindful that " 'constitutional concerns are greatest, ... when the State attempts to impose its will by the force of law.' " *Maher v. Roe,* 432 U.S. 464, 476, 97 S.Ct. 2376, 2383, 53 L.Ed.2d 484 (1977). The State of Montana's decision here, unlike the States' decision in *Maher v. Roe* and *Harris v. McRae,* does operate to " '[place a] governmental obstacle in the path of a woman who chooses to terminate her pregnancy.' " *Webster v. Reproductive Health Services,* 492 U.S. 490, 509, 109 S.Ct. 3040, 3052, 106 L.Ed.2d 410 (1989), *quoting, Harris v. McRae,* 448 U.S. at 315, 100 S.Ct. at 2687. Accordingly, I hold the State of Montana's refusal to extend Medicaid coverage to abortions terminating pregnancies resulting from an act of rape or incest, where the abortion is deemed medically necessary by the claimant's attending physician, is inconsistent with the mandate of Title XIX. Consistent with this conclusion, the court deems it appropriate to GRANT the plaintiffs' motion for summary judgment and enjoin the State of Montana from enforcing the requirements of Mont.Adm.Reg. 46.12.2002(i).

IT IS SO ORDERED.

The Clerk of Court shall forthwith notify the parties as to the entry of the present order.