57 F.3d 906
 48 Soc.Sec.Rep.Ser. 200, Medicare & Medicaid Guide
P 43,270
Warren M. HERN; Grand Junction Women's Clinic; Planned
Parenthood of the Rocky Mountains, named: Planned
Parenthood of the Rocky Mountains, Inc.;
Mayfair Women's Center,
Plaintiffs-Appellees,
v.
Karen BEYE, Executive Director, State Department of Social
Services, in her official capacity, Defendant-Appellant,
Colorado State Legislature, Amicus Curiae.
 No. 94-1205.
 United States Court of Appeals,
Tenth Circuit.
 June 8, 1995.
 
 Kathryn Kolbert, The Center for Reproductive Law & Policy, New York City (Eve C. Gartner and Janet Crepps, The Center for Reproductive Law & Policy, New York City, Daniel M. Reilly, McDermott, Hansen and Reilly, Denver, CO, with her on the brief), for plaintiffs-appellees.
 Howard Holme and Craig A. Umbaugh, Fairfield and Woods, P.C., Denver, CO, on the brief for plaintiff-appellee Planned Parenthood of the Rocky Mountains, Inc.
 Wade Livingston, First Asst. Atty. Gen., for the State of Colorado, Denver, CO (Gale A. Norton, Atty. Gen., and Paul Farley, Deputy Atty. Gen., with him on the briefs), for defendant-appellant Karen Beye.
 Paul Benjamin Linton and Clarke D. Forsythe, Americans United for Life, Chicago, IL, on the brief amicus curiae for Colorado State Legislature.
 Before MOORE, ANDERSON, and TACHA, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Plaintiffs are a physician and three women's health care facilities that provide abortion services to women in Colorado. They brought this action pursuant to 28 U.S.C. Secs. 2201 and 2202 seeking to enjoin defendant Karen Beye, the executive director of Colorado's Department of Social Services, from enforcing Colo. Const. art. V, Sec. 50, Colo.Rev.Stat. Secs. 26-4-105.5, 26-4-512, and 26-15-104.5, and 10 Colo.Code Regs. Sec. 2505-10 (8.733). These provisions forbid the Colorado state government, its agents, or its political subdivisions from funding abortions except to save the life of an expectant mother. The United States District Court for the District of Colorado held that a state that participates in the Medicaid program must fund abortions for Medicaid-eligible women to terminate pregnancies resulting from rape or incest. Accordingly, it granted plaintiffs an injunction prohibiting defendant from enforcing any of these provisions to the extent that they conflict with federal Medicaid law so long as Colorado continues to participate in Medicaid. We have jurisdiction pursuant to 28 U.S.C. Secs. 1291 and 1292(a)(1), and we affirm.
 
 
 2
 * By initiative, the voters of Colorado amended the state's constitution in 1984 to add the following section:
 
 
 3
 No public funds shall be used by the State of Colorado, its agencies or political subdivisions to pay or otherwise reimburse, either directly or indirectly, any person, agency or facility for the performance of any induced abortion, PROVIDED HOWEVER, that the General Assembly, by specific bill, may authorize and appropriate funds to be used for those medical services necessary to prevent the death of either a pregnant woman or her unborn child under circumstances where every reasonable effort is made to preserve the life of each.
 
 
 4
 Colo. Const. art. V, Sec. 50. Colorado has incorporated the mandate of section 50 into its statutes, Colo.Rev.Stat. Secs. 26-4-105.5, 26-4-512, 26-15-104.5, and its code of regulations, 10 Colo.Code Regs. Sec. 2505-10 (8.733).
 
 
 5
 In 1976, eleven years after the creation of the Medicaid program, Congress passed the Hyde Amendment, a rider attached to the appropriations bill for the Departments of Labor and Health, Education and Welfare (HEW).[1] Congress has subsequently altered the Hyde Amendment several times. The version in force from 1981 until 1993 prohibited the use of federal funds for abortions "except where the life of the mother would be endangered if the fetus were carried to term." See, e.g., Pub.L. No. 101-166, Sec. 204, 103 Stat. 1159, 1177 (1989).
 
 
 6
 On October 22, 1993, President Clinton signed into law the Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 1994, Pub.L. No. 103-112, 107 Stat. 1082 (1993). The Act contained a new version of the Hyde Amendment that expanded the category of abortions for which federal funds are available under Medicaid. Id. Sec. 509, 107 Stat. at 1113 (the 1994 Hyde Amendment). The language now in force states:
 
 
 7
 None of the funds appropriated under this Act shall be expended for any abortion except when it is made known to the Federal entity or official to which funds are appropriated under this Act that such procedure is necessary to save the life of the mother or that the pregnancy is the result of an act of rape or incest.
 
 
 8
 Id.
 
 
 9
 On November 8, 1993, plaintiffs brought this action seeking injunctive relief. They claimed that, because Colorado's funding restriction denies coverage for abortions for which federal funds are available under the 1994 Hyde Amendment--namely, abortions to terminate pregnancies resulting from rape or incest--Colorado's Medicaid program violates mandatory federal requirements. Defendant contended that participating states are not required to fund all abortions for which federal funds are available. Rather, she argued, the language of the Hyde Amendment is purely permissive, and the underlying federal statute and regulations leave the decision of whether to finance such services to the discretion of participating states. The district court granted plaintiffs injunctive relief, enjoining defendant from enforcing Colorado's abortion funding restriction to the extent that it conflicts with federal law.[2] Defendant now appeals.II
 
 
 10
 Title XIX of the Social Security Act of 1965, 42 U.S.C. Secs. 1396-1396v, establishes Medicaid, a jointly funded federal-state program designed to finance medical care for indigent Americans. Its stated purpose is to "enabl[e] each State, as far as practicable under the conditions in such State, to furnish ... medical assistance [to those persons] whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. Sec. 1396. Each state's participation in Medicaid is purely optional. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). But "[o]nce a State voluntarily chooses to participate in Medicaid, the State must comply with the requirements of Title XIX and applicable regulations." Alexander v. Choate, 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 714 n. 1, 83 L.Ed.2d 661 (1985). Colorado participates in Medicaid through the Colorado Medical Assistance Act, Colo.Rev.Stat. Secs. 26-4-101 to -704.
 
 
 11
 The Hyde Amendment circumscribes participating states' obligations to fund abortions under Medicaid. On its face, the Hyde Amendment appears to be only an appropriations measure; it merely prohibits the use of federal funds for certain services. But in Harris v. McRae, 448 U.S. at 297, 100 S.Ct. at 2677-78, the Supreme Court construed the Hyde Amendment as indirectly modifying states' obligations under Title XIX. The plaintiffs in McRae contended that, despite the Hyde Amendment, Title XIX required states to fund all medically necessary abortions, including those for which federal funds were unavailable. See id. at 304-05, 100 S.Ct. at 2681-82. The Court, however, reasoned that "Title XIX was designed as a cooperative program of shared financial responsibility, not as a device for the Federal Government to compel a State to provide services that Congress itself is unwilling to fund." Id. at 309, 100 S.Ct. at 2684. As a result,
 
 
 12
 by the normal operation of Title XIX, even if a State were otherwise required to include medically necessary abortions in its Medicaid plan, the withdrawal of federal funding under the Hyde Amendment would operate to relieve the State of that obligation for those abortions for which federal reimbursement is unavailable.
 
 
 13
 Id. at 310, 100 S.Ct. at 2684.
 
 
 14
 Thus, the Hyde Amendment--by denying federal funds for certain abortions--operates as an overlying exception to the requirements of Title XIX and accompanying regulations, carving out particular services that states are not obligated to cover. Under the 1994 Hyde Amendment, states are not required to fund abortions when the pregnancy is not the result of rape or incest and the expectant mother's life is not at stake.
 
 
 15
 Importantly, however, the Hyde Amendment does not affect states' underlying obligations imposed by Title XIX and federal Medicaid regulations. That is, although the Hyde Amendment relieves states of having to fund abortions for which federal funding is unavailable, it does not alter states' obligations with respect to abortions for which federal funding is available. Because the 1994 Hyde Amendment permits federal funding for abortions to end pregnancies resulting from rape or incest, the only issue here is whether Colorado's funding restriction contravenes the requirements of Title XIX and accompanying regulations.
 
 III
 
 16
 Title XIX requires participating states to provide medical assistance to the "categorically needy"--individuals who qualify for Medicaid because they receive some form of federal cash assistance (e.g., Aid to Families with Dependent Children or Supplemental Security Income). 42 U.S.C. Sec. 1396a(a)(10)(A)(i); 42 C.F.R. Sec. 436.100-.128. States may also, at their option, cover "medically needy" individuals--persons who do not qualify as categorically needy but nevertheless cannot afford adequate medical care. 42 U.S.C. Sec. 1396a(a)(10)(A)(ii); 42 C.F.R. Sec. 436.300-.330.
 
 
 17
 While states have considerable flexibility in determining the scope of their Medicaid coverage, see 42 C.F.R. Sec. 430.0; Beal v. Doe, 432 U.S. 438, 444, 97 S.Ct. 2366, 2370-71, 53 L.Ed.2d 464 (1977), Title XIX requires states to cover at least seven general categories of medical services for categorically needy individuals, 42 U.S.C. Sec. 1396a(a); id. Sec. 1396d(a)(1)-(5), (17), (21); 42 C.F.R. Sec. 440.210. Abortion falls under several of these "mandatory coverage" categories, including "inpatient hospital services," 42 U.S.C. Sec. 1396d(a)(1), "outpatient hospital services," id. Sec. 1396d(a)(2)(A), "family planning services," id. Sec. 1396d(a)(4)(C), and "physicians' services furnished by a physician," id. Sec. 1396d(a)(5)(A).
 
 
 18
 Participating states are not required, however, to fund all medical services falling under one of the mandatory coverage categories. Beal, 432 U.S. at 441, 97 S.Ct. at 2369. Rather, Title XIX "confers broad discretion on the States to adopt standards for determining the extent of medical assistance" offered in their Medicaid programs. Id. at 444, 97 S.Ct. at 2370-71. In addition, federal Medicaid regulations expressly permit participating states to "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. Sec. 440.230(d).
 
 
 19
 Nonetheless, there are important restrictions on states in their exercise of this discretion. Two of those restrictions are particularly relevant here. First, Title XIX requires participating states to establish "reasonable standards ... for determining ... the extent of medical assistance under [their Medicaid] plan which ... are consistent with the objectives of [Title XIX]." 42 U.S.C. Sec. 1396a(a)(17). Second, state Medicaid plans "may not arbitrarily deny or reduce the amount, duration, or scope of [such] service[s] ... to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." 42 C.F.R. Sec. 440.230(c).
 
 IV
 
 20
 Colorado's restriction on abortion funding is essentially a limit based on the patient's degree of medical necessity pursuant to 42 C.F.R. Sec. 440.230(d): It restricts Medicaid funding for abortions to those instances when the expectant mother's life is at stake. We conclude that this restriction violates the requirements of federal law--requirements that Colorado is compelled to follow as a condition of its participation in Medicaid.
 
 
 21
 First, Colorado's Medicaid program as amended by the abortion funding restriction impermissibly discriminates in its coverage of abortions on the basis of a patient's diagnosis and condition. While 42 C.F.R. Sec. 440.230(c) allows states to use medical need as a criterion for placing appropriate limits on coverage, a state may not single out a particular, medically necessary service and restrict coverage to those instances where the patient's life is at risk. Preterm, Inc. v. Dukakis, 591 F.2d 121, 126 (1st Cir.), cert. denied, 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979). Such a "policy denies service solely on the basis of diagnosis or condition, and does so arbitrarily because the denial is not in accordance with a uniform standard of medical need." Hodgson v. Board of County Comm'rs, 614 F.2d 601, 608 (8th Cir.1980) (footnotes omitted). Indeed, "[w]hen a state singles out one particular medical condition ... and restricts treatment for that condition to life and death situations it has ... crossed the line between permissible discrimination based on degree of need and entered into forbidden discrimination based on medical condition." Preterm, 591 F.2d at 126; see also Zbaraz v. Quern, 596 F.2d 196, 199 (7th Cir.1979) ("We agree with the conclusion of the court in Preterm that limiting Medicaid assistance to life-threatening abortions 'violate[s] the purposes of the Act and discriminate[s] in a proscribed fashion.' ") (quoting Preterm, 591 F.2d at 126), cert. denied, 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980).
 
 
 22
 Second, Colorado's restriction violates 42 U.S.C. Sec. 1396a(a)(17) because it is inconsistent with the basic objective of Title XIX--to provide qualified individuals with medically necessary care. The purpose of Medicaid as stated in the Act is to enable states to provide medical treatment to needy persons "whose income and resources are insufficient to meet the cost of necessary medical services." Id. Sec. 1396 (emphasis added). This circuit, as well as several other courts, has interpreted Title XIX and its accompanying regulations as imposing a general obligation on states to fund those mandatory coverage services that are medically necessary. See, e.g., Doe v. Rose, 499 F.2d 1112, 1114 (10th Cir.1974) ("The import ... of [Medicaid's] statutory scheme is that indigents who qualify for Medicaid benefits are to receive all necessary medical and hospital care."); Weaver v. Reagen, 886 F.2d 194, 198 (8th Cir.1989) (holding that Title XIX "require[s] that a state Medicaid plan provide treatment that is deemed 'medically necessary' in order to comport with the objectives of the Act"); Pinneke v. Preisser, 623 F.2d 546, 549 (8th Cir.1980) ("Title XIX ... mandates that [seven] basic categories of medical assistance be provided to all categorically needy persons when the assistance is medically necessary."); cf. Beal, 432 U.S. at 444, 97 S.Ct. at 2370-71 (stating that "serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage").[3]
 
 
 23
 It may be that, pursuant to a generally applicable funding restriction or utilization control procedure, a participating state could deny coverage for a service deemed medically necessary in a particular case. See, e.g., Miller v. Whitburn, 10 F.3d 1315, 1321 (7th Cir.1993) (stating that a participating state may deny coverage for experimental treatments so long as its definition of "experimental" and its application of the restriction are reasonable); Charleston Memorial Hosp. v. Conrad, 693 F.2d 324, 330 (4th Cir.1982) (holding that a state's annual limits on Medicaid coverage to twelve inpatient hospital days--which met the needs of 88 percent of Medicaid recipients--and eighteen outpatient hospital visits--which met the needs of 99 percent of Medicaid recipients--was consistent with Title XIX and applicable regulations); Curtis v. Taylor, 625 F.2d 645, 651-53 (5th Cir.1980) (upholding a state's limit on Medicaid coverage to three physicians' visits per month where only 3.9 percent of the state's Medicaid population had required more than three physicians' visits in any one month in the year before the regulation was adopted).[4] But a state law that categorically denies coverage for a specific, medically necessary procedure except in those rare instances when the patient's life is at stake is not a "reasonable standard[ ] ... consistent with the objectives of [the Act]," 42 U.S.C. Sec. 1396a(a)(17), but instead contravenes the purposes of Title XIX. Accord Hodgson, 614 F.2d at 611; Zbaraz, 596 F.2d at 199; Preterm, 591 F.2d at 126; cf. Pinneke, 623 F.2d at 549 (holding that a state policy creating an irrebuttable presumption that a particular procedure "can never be medically necessary" under certain circumstances was "not consistent with the objectives of the Medicaid statute").
 
 
 24
 We note that the four other circuit courts to confront similar state restrictions on abortion funding under Medicaid have all concluded that such limitations violate the requirements of federal Medicaid law. See Edwards v. Hope Medical Group for Women, --- U.S. ----, ----, 115 S.Ct. 1, 2, 129 L.Ed.2d 903 (1994) (Scalia, Circuit Justice) (citing Roe v. Casey, 623 F.2d 829, 831, 834 (3d Cir.1980), Hodgson, 614 F.2d at 611, Zbaraz, 596 F.2d at 199, and Preterm, 591 F.2d at 126-27). Two of those courts expressly held that states participating in Medicaid must subsidize all abortions for which federal funds are available. See Casey, 623 F.2d at 836 ("Title XIX, as ... modified [by the Hyde Amendment], requires the states to fund abortions in two categories: where the mother is endangered and where the pregnancy was the result of rape or incest."); Zbaraz, 596 F.2d at 199 n. 7 (stating that the Hyde Amendment "clearly mandates" that participating states subsidize those abortions for which federal funding is available). The two other courts held that a state's restriction of abortion coverage to those cases where the woman's life is at stake--when the Hyde Amendment makes federal funding available for a broader class of abortions--violates the requirements of Title XIX. See Hodgson, 614 F.2d at 611 ("Minnesota's welfare scheme, which subsidizes medical assistance services generally but which subjects abortions to a 'life-threatening' standard, is inconsistent with and superseded by Title XIX."); Preterm, 591 F.2d at 126 ("We find it 'unreasonable' and wholly '[in]consistent with the objectives of the Act', 42 U.S.C. Sec. 1396a(a)(17), for a state to provide abortion services and then ... deny it to all those who will not die without it.").
 
 
 25
 We are also bolstered in our reasoning by several recent district court decisions. Indeed, every federal district court to consider this precise question since Congress enacted the 1994 Hyde Amendment has concluded that participating states must fund abortions to end pregnancies resulting from rape or incest. See Fargo Women's Health Org., Inc. v. Wessman, Civ. No. A3-94-36, slip op. at 25, 1995 WL 465830 (D.N.D. Mar. 15, 1995); Orr v. Nelson, 874 F.Supp. 998, 1003 (D.Neb.1995); Stangler v. Shalala, No. 94- 4221-CV-C-5, 1994 WL 764104, at * 5 (W.D.Mo. Dec. 28, 1994); Planned Parenthood v. Wright, No. 94 C 6886, 1994 WL 750638, at * 2 (N.D.Ill. Dec. 6, 1994); Elizabeth Blackwell Health Center for Women v. Knoll, No. 94-CV-0169, 1994 WL 512365, at * 1 (E.D.Pa. Sept. 15, 1994); Hope Med. Group for Women v. Edwards, 860 F.Supp. 1149, 1154 (E.D.La.1994); Little Rock Family Planning Servs. v. Dalton, 860 F.Supp. 609, 622 (E.D.Ark.1994); Planned Parenthood Affiliates v. Engler, 860 F.Supp. 406, 409-10 (W.D.Mich.1994); Planned Parenthood v. Blouke, 858 F.Supp. 137, 141 (D.Mont.1994).
 
 
 26
 Finally, our interpretation of Title XIX and the Medicaid regulations plainly comports with Congress' understanding of the effect of passing the 1994 Hyde Amendment. The floor debates in the Senate and the House of Representatives reveal Congress's understanding that participating states must fund those abortions for which federal funds are available. For instance, Senator Hatch stated that if the Hyde Amendment were repealed, "every State will be required to provide matching funds for abortion on demand." 139 Cong.Rec. S12,581 (daily ed. Sept. 28, 1993). Senator Nickles likewise stated that "removal of the Hyde language would result in mandating that the States pay for these abortions with State dollars.... This is not a State opt out. There are no state options. States have to match the Federal funds." Id. at S12,588.[5] In the House, Representative Dornan stated that unless HHS
 
 
 27
 designates abortions as an optional procedure, or treats abortion differently from all other Medicaid services by paying for them entirely with Federal funds--rather than requiring a state match--[repealing the Hyde Amendment would mean that] States would be required to participate in providing abortions on demand, or lose Federal Medicaid reimbursement.
 
 
 28
 139 Cong.Rec. H4325 (daily ed. June 30, 1993). And Representative Waxman stated that eliminating the Hyde Amendment would mean that "medically necessary abortions would be required to be performed by the States." Id. at H4323.
 
 
 29
 We acknowledge that Colorado "has legitimate interests from the outset of the pregnancy in protecting ... the life of the fetus that may become a child." Planned Parenthood v. Casey, --- U.S. ----, ----, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992); see also Roe v. Wade, 410 U.S. 113, 162, 93 S.Ct. 705, 731, 35 L.Ed.2d 147 (1973) (recognizing a state's "important and legitimate interest in ... protecting the potentiality of human life" in a fetus). We also recognize that Colorado "has a valid and important interest in encouraging childbirth." Beal, 432 U.S. at 445, 97 S.Ct. at 2371. If Colorado chose not to participate in Medicaid, it would not be required to fund any abortions whatsoever. Maher v. Roe, 432 U.S. 464, 469, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1977). But because Colorado has decided to participate and accept federal Medicaid funds, it must do so on the terms established by Congress. So long as Colorado continues to participate in Medicaid, it cannot deny Medicaid funding for abortions to qualified women who are the victims of rape or incest.
 
 V
 
 30
 In sum, we find that Colorado's abortion funding restriction, as stated in Colo. Const. art. V, Sec. 50, Colo.Rev.Stat. Secs. 26-4-105.5, 26-4-512, 26-15-104.5, and 10 Colo.Code Regs. Sec. 2505-10 (8.733), violates federal Medicaid law insofar as it denies funding to Medicaid-eligible women seeking abortions to end pregnancies that are the result of rape or incest. So long as Colorado continues to participate in Medicaid, defendant is enjoined from denying Medicaid funding for abortions to qualified women whose pregnancies are the result of rape or incest.[6] Accordingly, we AFFIRM the district court's order granting plaintiffs final injunctive relief.
 
 
 
 [1]
 HEW has subsequently been divided into two separate executive departments: the Department of Education and the Department of Health and Human Services (HHS)
 
 
 [2]
 After issuing its ruling from the bench May 5, 1994, the court issued a written order a week later that further explained its decision. Hern v. Beye, No. CIV-A-93 N 2350, 1994 WL 192366 (D.Colo. May 12, 1994). The two orders, when read together, are somewhat unclear as to the scope of the injunction granted. Nevertheless, the written order of May 12 evinces the district court's intention to enjoin defendant from enforcing Colorado's abortion funding restriction only "insofar as those statutes or rules are more restrictive" than federal requirements. Id. at * 2; see also id. at * 1 (noting that nothing in the injunction "mandates that [defendant] go beyond federal requirements"). We therefore understand the court's injunction as prohibiting defendant--so long as Colorado continues to accept federal Medicaid funds--from enforcing the abortion funding restriction in a manner that conflicts with federal Medicaid law
 
 
 [3]
 See also Little Rock Family Planning Servs. v. Dalton, 860 F.Supp. 609, 616 (E.D.Ark.1994) ("What Title XIX does is to specify the categories of care ... that every state Medicaid program must cover when 'medically necessary.' "); Visser v. Taylor, 756 F.Supp. 501, 507 (D.Kan.1990) (holding that the "touchstone" of cases interpreting Title XIX's requirements for coverage "is medical necessity"); Allen v. Mansour, 681 F.Supp. 1232, 1237 (E.D.Mich.1986) ("[T]he medical necessity of the procedure is the touchstone for evaluating the reasonableness of standards in state medicaid plans."); Montoya v. Johnston, 654 F.Supp. 511, 513 (W.D.Tex.1987) (holding that "it would be inconsistent with the objectives of the [Medicaid] Act" for a state to deny funding for "medically necessary treatment"); Simpson v. Wilson, 480 F.Supp. 97, 101 (D.Vt.1979) ("The federal regulations do not permit [a state] to decline to provide medically necessary services.")
 
 
 [4]
 Importantly, the court in Curtis noted that the coverage restriction at issue in that case was "completely unlike state limitations on treatment for abortions to life and death situations. Such limitations single out pregnancy and establish a unique standard governing the provision of necessary medical services for that condition." Curtis, 625 F.2d at 652
 
 
 [5]
 Other senators stated that repealing the Hyde Amendment would "mandate[ ] taxpayer-funded abortion on demand for Medicaid-eligible women," 139 Cong.Rec. S12,577 (daily ed. Sept. 28, 1993) (statement of Senator Smith), "allow all women in this Nation, regardless of income or status, the ability to exercise their constitutional right to choose," id. at S12,575 (statement of Senator Murray), and mean that "Government will get out of the business of intruding into the lives, private lives, of women and let a woman make the decision for herself," id. at S12,582 (statement of Senator Mikulski)
 
 
 [6]
 Again, we understand the district court's injunction as enjoining defendant from enforcing Colorado's abortion funding restriction only to the extent that it conflicts with federal Medicaid law. See note 2 supra. It is on this basis that we affirm the district court's order