**UTAH WOMEN'S CLINIC, INC.; Planned Parenthood Association of Utah; Salt Lake Rape Crisis Center; YWCA of Salt Lake City, on behalf of themselves and the Medicaid-eligible individuals they serve; and SARAH K. (pseudonym), Plaintiffs,**

**v.**

**Jan GRAHAM, Attorney General of the State of Utah; Rod Betit, Director of the Utah Department of Health; Michael Leavitt, Governor of the State of Utah, in their individual and official capacities, and their successors, Defendants.**

No. 95–CV–90G.

United States District Court,
D. Utah,
Central Division.

June 20, 1995.

Jeffrey R. Oritt of Cohne, Rappaport & Segal, A. Howard Lundgren of Keller & Lundgren, and Eve C. Gartner of the Center for Reproductive Law & Policy, for plaintiffs.

Jan Graham, Atty. Gen. of the State of Utah, and Douglas W. Springmeyer, Asst. Atty. Gen. of the State of Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on Defendants' Motion to Stay Proceedings and on Cross Motions for Summary Judgment. Plaintiffs are represented by Jeffrey R. Oritt of Cohne, Rappaport & Segal, A. Howard Lundgren of Keller & Lundgren, and Eve C. Gartner of the Center for Reproductive Law & Policy. Defendants are represented by Jan Graham, Attorney General of the State of Utah, and Douglas W. Springmeyer, Assistant Attorney General of the State of Utah. A hearing on these motions was held on May 18, 1995, after which the matters were taken under advisement. Plaintiffs Utah Women's Clinic, Inc., Planned Parenthood of Utah, Salt Lake Rape Crisis Center, and YWCA of Salt Lake City, are entities that provide reproductive health care services, including abortions. Plaintiff Sarah K. (a pseudonym) is a Medicaid-eligible woman who has become pregnant as a result of rape.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 on behalf of themselves and the Medicaid-eligible women they serve, seeking a declaration by this Court that Utah's abortion funding statute contravenes the federal Medicaid statute by failing to provide funding for abortions in cases of rape and incest and is therefore invalid under the

Supremacy Clause of the United States Constitution.

On June 8, 1995, the Tenth Circuit Court of Appeals in *Hern v. Beye,* 57 F.3d 906 (10th Cir.1995), held that a provision in the constitution of Colorado which contains an abortion funding restriction violates federal Medicaid law "insofar as it denies funding to Medicaid-eligible women seeking abortions to end pregnancies that are the result of rape or incest." The statute in question in Utah is substantially similar to the Colorado constitutional provision.[1]

## ANALYSIS

### I. MOTION TO STAY THE PROCEEDINGS.

In their motion for stay of proceedings, defendants point out that legislation has been introduced in Congress that would resolve the issues before this court. Specifically, defendants point to a letter from Congressman Henry Hyde to Governor Michael O. Leavitt of Utah, in which Congressman Hyde informs the Governor of his "intent to ensure that Congress passes legislation that would give the states the option of choosing not to use state funds to pay for rape and incest abortions." Defendants assert that a stay of the proceedings in the instant matter, pending Congressional action, would conserve judicial resources and conserve public funds. Moreover, defendants claim that an abeyance would not harm plaintiffs because funds for such abortions are available from private sources.[2]

In response, plaintiffs note that the only Congressional action that had occurred as of the date of hearing with respect to the abortion-funding issue in this case was the introduction in the House Appropriations Committee on March 2, 1994, of a proposed amendment to a Fiscal Year 1995 Recissions Bill that addressed the subject. This amendment—known as the Istook Amendment—was withdrawn from the pending Recissions Bill on March 9, 1995.

■ It appears to the court that any further legislation which may be introduced will involve issues which are complex and politically charged. Consequently, it is impossible to predict the outcome of any Congressional action on the matter. Therefore, this court declines to stay these proceedings on these grounds. *See Gabarczyk v. Bd. of Ed. of Sch. Dist. of Poughkeepsie,* 738 F.Supp. 118, 121 (S.D.N.Y.1990) (denying motion to stay "[i]n light of the uncertainty of the nature and timing of Congressional Action"); *EEOC v. Bethlehem Steel Corp.,* 727 F.Supp. 952, 955 (E.D.Pa.1990).

### II. FEDERAL MEDICAID LEGISLATION.

■ It is clear to this court, and such was expressly articulated by the Tenth Circuit in *Hern v. Beye,* that the so-called "Hyde Amendment" is strictly a funding restriction statute, and that it "does not affect states' underlying obligations imposed by Title XIX and federal Medicaid regulations." *Hern v. Beye,* 57 F.3d at 909.

#### A. Hyde Amendment—Permitted Abortion Funding Restrictions.

The "Hyde Amendment" is legislation that has been enacted annually by Congress since

1. The relevant provision of the Colorado constitution provides:

   No public funds shall be used by the State of Colorado, its agencies or political subdivisions to pay or otherwise reimburse, either directly or indirectly, any person, agency or facility for the performance of any induced abortion, PROVIDED HOWEVER, that the General Assembly, by specific bill, may authorize and appropriate funds to be used for those medical services necessary to prevent the death of either a pregnant woman or her unborn child under circumstances where every reasonable effort is made to preserve the life of each.
   Colo. Const. art. V, § 50.
   The Utah statute provides that:

   [t]he department shall not provide any [Medicaid] funds for medical, hospital or other medical expenditures or medical services to otherwise eligible persons where the purpose of the assistance is to perform an abortion, unless the life of the mother would be endangered if an abortion were not performed.
   Utah Code Ann. § 26–18–4(2). *See* discussion of Utah statute at *infra* pp. 1381–1384.

2. Stressing that the issue presented here is abortion *funding* and not the right to an abortion, defendants point out that Planned Parenthood and other private sources have provided and will continue to provide funding for the few such abortions which may be involved.

September, 1976—often as part of the annual Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act—that prohibits the use of any federal funds to reimburse the cost of abortions under the Medicaid program except under certain specified circumstances. In relevant part, the fiscal 1995 version of the Hyde Amendment states:

> [N]one of the funds appropriated under this Act shall be expended for any abortion except when it is made known to the Federal entity or office to which funds are appropriated under this Act that such procedure is necessary to save the life of the mother or that *the pregnancy is the result of an act of rape or incest.*

Pub.L. 103–333, 108 Stat. 2539, § 509 (1994) (emphasis added).

■ This court finds compelling reasons for an interpretation of the Hyde Amendment as not constituting a mandate. First, "[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975). Taking a plain language approach, it appears that the Hyde Amendment relates only to availability of federal funding for abortions. Nowhere does the language of the Hyde Amendment compel the conclusion that Congress intended to mandate states to fund all abortions for which federal funding is available. To the contrary, it appears that the Hyde Amendment merely indicates which abortions are *eligible* for federal funding.

Second, to hold that despite its plain language, the Hyde Amendment alters states' obligations as they otherwise exist under Title XIX is to give undue weight to an appropriation bill of inherently limited duration. Such an approach has been specifically disapproved by the Supreme Court. *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 189, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978). Further, both houses of Congress have procedural rules that prohibit the altering of existing law through an appropriations measure, and only the House expressly waived that rule when the Hyde Amendment was originally passed. *Preterm, Inc. v. Dukakis,* 591 F.2d 121, 135 (1st Cir.1979) (Bownes, J., dissenting), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979). If Congress intends to substantially amend Title XIX so as to expressly require states to provide certain funding in the case of abortions, it is capable of making a clear and manifest statement to that effect. *See Hodgson v. Bd. of County Comm'rs, County of Hennepin,* 614 F.2d 601, 616 (8th Cir.1980) (McManus, J., dissenting).

■ This court is not persuaded otherwise by a December 28, 1993, letter from the director of the Medicaid Bureau of the Health Care Financing Administration ("HCFA"), the federal agency that oversees state Medicaid programs, to state Medicaid directors, which states:

> As with all other mandatory medical services for which federal funding is available, States are required to cover abortions that are medically necessary. By definition, abortions that are necessary to save the life of the mother are medically necessary. In addition, Congress this year added abortions for pregnancies resulting from rape and incest to the category of medically necessary abortions for which funding is provided.... [W]e believe that this change in the text of the Hyde Amendment signifies Congressional intent that abortions of pregnancies resulting from rape or incest are medically necessary in light of both medical and psychological health factors. Therefore, abortions resulting from rape or incest should be considered to fall within the scope of services that are medically necessary.

If a statute is ambiguous or silent on a specific issue, courts should defer to the reasonable interpretation of the administrative agency responsible for its implementation. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). However, if the statute is unambiguous on its face, "that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* Since the plain language of the Hyde Amendment is unambiguous, this court need not defer to an agency interpretation.

In any event, this court doubts that the aforesaid letter from the director of the agency constitutes an HCFA interpretation to which courts owe deference. There is no indication that the impact of the Hyde Amendment was formally considered under agency procedures, so the HCFA letter may be no more than the personal interpretation of the director. The HCFA letter interprets the Hyde Amendment to be a substantive change to Title XIX, and finds an intent in the Hyde Amendment to define the term "medically necessary" to include abortions of pregnancies that result from rape and incest. This court rejects the interpretation of the Hyde Amendment set forth in the letter as unreasonable and based upon an impermissible construction of the relevant statutes. *See id.,* 467 U.S. at 843, 104 S.Ct. at 2782. If the letter does represent the agency's view, it conflicts with the plain language of the Hyde Amendment which unambiguously relates only to the availability of federal funding rather than the states' obligations to provide funding under Medicaid.

**B. Title XIX—Medicaid Limitations on States' Abortion Funding Discretion.**

■ Title XIX imposes two significant limitations on a participating state's funding discretion in implementing its state Medicaid plan. *First,* "[a] state Medicaid pla[n] [must] establish 'reasonable standards . . . for determining . . . the extent of medical assistance under the plan which . . . are consistent with the objectives of [Title XIX].' 42 U.S.C. § 1396a(a)(17)." *Harris v. McRae,* 448 U.S. 297, 302, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980) (internal quotations omitted) (citing *Beal v. Doe,* 432 U.S. 438, 441, 97 S.Ct. 2366, 2369, 53 L.Ed.2d 464 (1977)). *See also Hern v. Beye,* 57 F.3d at 910. *Second,* a state "may not arbitrarily deny or reduce the amount, duration, or scope of [such] service[s] . . . to an otherwise eligible recipient solely because of the diagnosis, type of ill-ness, or condition." 42 C.F.R. § 440.230(c). *See also Hern v. Beye,* 57 F.3d at 910.

In *Beal,* the Supreme Court identified the objectives of Title XIX to be that "each State, as far as practicable under the conditions in such State, . . . furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of *necessary medical services."* After holding that a state's refusal to fund unnecessary medical services is not inconsistent with the objectives of Title XIX, the Supreme Court stated that "serious statutory questions might be presented if a state Medicaid plan excluded *necessary medical treatment* from its coverage." 432 U.S. at 444, 97 S.Ct. at 2371 (citing 42 U.S.C. § 1396) (emphasis added). As a result of the language in the Supreme Court's decision in *Beal,* and the objectives of Title XIX as found in the statute, several courts have adopted the term "medically necessary" to designate those services for which a state is required to provide funding under Title XIX. *See, generally Dexter v. Kirschner,* 972 F.2d 1113, 1117 (9th Cir.1992); *Pinneke v. Preisser,* 623 F.2d 546, 549 (8th Cir.1980); *Montoya v. Johnston,* 654 F.Supp. 511, 512–13 (W.D.Tex.1987). Courts have generally recognized that in determining "medical necessity" the judgment of a patient's attending physician, the accumulated knowledge of the medical community, and scientific literature on the subject should be taken into account.[3] The "medically necessary" standard was expressly adopted by the Tenth Circuit in *Hern v. Beye,* 57 F.3d at 910–11.

In *Hern v. Beye,* the Tenth Circuit considered the objectives of Title XIX, and the obligations of participating states. The court stated that a participating state must "cover at least seven general categories of medical services for categorically needy individuals." *Hern v. Beye,* 57 F.3d at 909–10 (internal citations omitted). As the Tenth Circuit not-

---

3. *See Weaver v. Reagen,* 886 F.2d 194 (8th Cir. 1989); *Rush v. Parham,* 625 F.2d 1150 (5th Cir. 1980); *Pinneke v. Preisser,* 623 F.2d 546 (8th Cir.1980); *McLaughlin v. Williams,* 801 F.Supp. 633 (S.D.Fla.1992). Indeed, the Supreme Court recognized the importance of professional medical judgment in this area in *Beal v. Doe,* 432 U.S. at 445 n. 9, 97 S.Ct. at 2371 n. 9, and Congress

as well as the agency have likewise concurred. S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.C.C.A.N. 1943, 1986–89 ("the physician is to be the key figure in the determining utilization of health services"). The regulations implementing Title XIX likewise reflect the importance of physicians' judgment. *See, e.g.* 42 C.F.R. § 424.10 (1992).

ed, abortion falls within several of the "mandatory services" categories, "including 'inpatient hospital services,' 42 U.S.C. § 1396d(a)(1), 'outpatient hospital services,' *id.* § 1396d(a)(2)(A), 'family planning services,' *id.* § 1396d(a)(4)(C), and 'physicians' services furnished by a physician,' *id.* § 1396d(a)(5)(A)." *Hern v. Beye,* 57 F.3d at 910.

■ Although a procedure falls under one of the mandatory coverage categories, a participating state is granted "broad discretion," *id.* (quoting *Beal v. Doe,* 432 U.S. at 441, 97 S.Ct. at 2369), to "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." *See also Harris v. McRae,* 448 U.S. at 302, 100 S.Ct. at 2680 ("[A] participating State need not provide funding for all medical treatment falling within the five general categories."). In *Hern v. Beye,* however, the Tenth Circuit pointed out that states are prohibited from "singl[ing] out a particular, medically necessary service and restrict coverage to those instances where the patient's life is at risk." 57 F.3d at 910.

## III. UTAH'S ABORTION FUNDING STATUTE.

Utah's abortion funding statute, Utah Code Ann. § 26–18–4(2), provides:

[t]he department shall not provide any [Medicaid] funds for medical, hospital or other medical expenditures or medical services to otherwise eligible persons where the purpose of the assistance is to perform an abortion, *unless the life of the mother would be endangered* if an abortion were not performed.

(emphasis added).

■ Based upon the ruling of the Tenth Circuit in *Hern v. Beye,* which this court is obliged to follow, defendants are enjoined from enforcing Utah's abortion funding restriction to the extent that it conflicts with federal Medicaid law.[4] So long as Utah continues to accept federal Medicaid funds, the Supremacy Clause requires the state to participate on the terms established by Congress. *See Planned Parenthood Association of Utah v. Dandoy,* 635 F.Supp. 184, 190 (D.Ut.1986). Accordingly, this court holds that the state cannot deny Medicaid funding for "medically necessary"[5] abortions to eligible women whose pregnancy is the result of rape or incest, so long as federal matching funds are available for such abortions.[6]

Counsel for plaintiffs are directed to prepare and submit to the court a form of

4. Nearly twenty years ago, Judge Aldon J. Anderson of this district court ruled that Utah's abortion-funding statute was in compliance with Title XIX. *D.R. v. Mitchell,* 456 F.Supp. 609 (D.Ut.1978) (Anderson, J.), *rev'd,* 617 F.2d 203 (10th Cir.1980), *vacated,* 449 U.S. 808, 101 S.Ct. 53, 66 L.Ed.2d 10 (1980), *on remand,* 645 F.2d 852 (10th Cir.1981). The *D.R. v. Mitchell* case held that Utah's abortion funding scheme was not unreasonable. *Id.* at 619. This is in clear accord with *Beal v. Doe,* 432 U.S. at 445, 97 S.Ct. at 2371, wherein the Supreme Court stated that "a State has a valid and important interest in encouraging childbirth." The Supreme Court also has observed that a state's interest in its rate of population growth and protection of fetuses "are basic to the future of the state and in some circumstances could constitute a substantial reason for departure from a position of neutrality between abortion and childbirth." *Maher v. Roe,* 432 U.S. 464, 478 n. 11, 97 S.Ct. 2376, 2385 n. 11, 53 L.Ed.2d 484 (1977). However, even though the Utah abortion statute is not unreasonable, so long as the state continues to participate in the federal Medicaid program, the state plan must also be consistent with the objectives of the federal legislation.

5. *See* discussion on "medical necessity" and other objectives of Title XIX, *supra* pp. 1383–1384.

6. *See Harris v. McRae,* 448 U.S. at 311, 100 S.Ct. at 2685 ("[W]e conclude that Title XIX does not require a participating State to pay for those medically necessary abortions for which federal reimbursement is unavailable under the Hyde Amendment.").

The state should review requests for reimbursement of the private funds expended by Plaintiffs Utah Women's Clinic and Planned Parenthood of Utah in abortions for Plaintiff Sarah K., and the other women who have submitted affidavits in this case in light of this decision. A recent case involves a 14 year-old Medicaid recipient, approximately 20 weeks pregnant as a result of rape, who was denied Medicaid coverage for an abortion on May 30, 1995. There appears to be some dispute as to the matter of eligibility and as to whether a request for services was ever filed on behalf of some of the women for whom abortion funding reimbursement is sought. The court presumes that the parties can agree on such matters, but stands ready to provide judicial assistance if need be.

injunctive order consistent with this Order, after complying with D.Ut.Rule 206.

It is So Ordered.