**HOPE MEDICAL GROUP FOR WOMEN, on behalf itself and the Medicaid-eligible women of the State of Louisiana to whom it provides health care; Ifeanyi Charles Okpalobi, M.D., on behalf of himself and his Medicaid-eligible patients seeking abortions; and Zora H. (a pseudonym), on behalf of herself**

v.

**Edwin EDWARDS, Governor of the State of Louisiana, Richard Ieyoub, Attorney General of the State of Louisiana; Rose Forrest, Secretary of the Louisiana Department of Health and Hospitals; in their official capacities and their successors.**

Civ. A. No. 94–1129.

United States District Court, E.D. Louisiana.

July 28, 1994.

---

Sidney M. Bach, Bach & Wasserman, Metairie, LA, William E. Rittenberg, New Orleans, LA, and Simon Heller and Terri James, New York City, for plaintiff.

Roy A. Mongrue, Jr., Dept. of Justice, Richard P. Ieyoub, Louisiana Dept. of Justice, Div. of Risk Litigation, Mary Patricia Jones, Louisiana Dept. of Justice, Crim. Div., and Richard Allen Sherburne, Jr., Louisiana, Dept. of Justice, Baton Rouge, LA, for defendant.

### REASONS FOR JUDGMENT

LIVAUDAIS, District Judge.

Plaintiffs Hope Medical Group for Women, on behalf of itself and the Medicaid-eligible women of the State of Louisiana to whom it provides health care, Ifeanyi Charles Okpalobi, M.D., on behalf of himself and his Medicaid-eligible patients seeking abortions, and Zora H., on behalf of herself, have filed a motion for a preliminary injunction prohibiting defendants from enforcing LSA–R.S. 40:1299.34.5, and ordering defendants immediately to reimburse the cost of plaintiff Zora H.'s abortion. Defendants Louisiana Governor Edwin Edwards, Louisiana Attorney General Richard Ieyoub, and Louisiana Secretary of the Department of Health and Hospitals Rose Forrest oppose the motion.

At the hearing, which was scheduled and notice afforded to all interested parties, plaintiffs Hope Medical Group for Women ("Hope") and Zora H. requested that trial of the action on the merits be advanced and consolidated with the hearing on the preliminary injunction. Rule 65(a)(2) of the Federal Rules of Civil Procedure provides that "[b]efore or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." *Federal Civil Judicial Procedure and*

*Rules,* 1994 Edition (West 1994). Counsel for Dr. Ifeanyi Okpalobi and for all defendants had no objection and agreed to the consolidation, so the Court ordered the consolidation of trial on the merits with the hearing on the preliminary injunction.

Louisiana Revised Statute § 40:1299.34.5 provides:

> Notwithstanding any other provision of law to the contrary, no public funds, made available to any institution, board, commission, department, agency, official, or employee of the State of Louisiana, or of any local political governmental subdivision, or from any other public source shall be used in any way for, to assist in, or to provide facilities for an abortion, except when the abortion is medically necessary to prevent the death of the mother.

LSA–R.S. 40:1299.34.5 (West 1994). Plaintiffs argue that because this statute conflicts with Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.,* establishing Louisiana's Medicaid program, the statute must be invalidated. *See, King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) and *Planned Parenthood Association of Utah v. Dandoy,* 810 F.2d 984, 988 (10th Cir.1987).

Title XIX establishes state medicaid programs to cover the cost of medical services for low income persons in states participating in the program. While state participation is not mandatory, those states who do participate must comply with federal statutory and regulatory requirements. *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 500, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990); *St. Tammany Parish Hospital Service District v. DHHR,* 677 F.Supp. 455, 457 (E.D.La. 1988). Under Title XIX, certain services are mandatory and must be covered by the state Medicaid program and others are optional. Mandatory services which must be offered include:

> (1) inpatient hospital services ...; (2) outpatient hospital services ...; (3) other laboratory and x-ray services; (4)(A) nursing facility services ...; (B) early and periodic screening, diagnostic and treatment services ... for individuals ... under the age of 21; (C) family planning services ...;

> (5)(A) physicians' services furnished by a physician.

42 U.S.C. § 1396d(a)(1)–(5). Each state's Medicaid plan must cover those mandatory covered services which an individual patient's physician certifies are "medically necessary." *See, e.g., Weaver v. Reagen,* 886 F.2d 194, 200 (8th Cir.1989).

Medicaid covered all medically necessary abortions between 1973 and 1976. The Hyde Amendment was passed by Congress in 1976, prohibiting federal reimbursement for abortions except in those narrow circumstances where Congress defines the abortions to be "medically necessary." *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784, *reh'g denied,* 448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980). Every year the Hyde Amendment is added to appropriation bills to fund the United States Department of Health and Human Services, the Department which administers Title XIX and Social Security. Abortion funding was limited to those circumstances when the life of the pregnant woman would be threatened by carrying the pregnancy to term between fiscal years 1982 and 1993.

The Hyde Amendment for 1994, included in the appropriations bill for the U.S. Departments of Labor, Health and Human Services, and Education, and related agencies, provides:

> None of the funds appropriated under the Act shall be expended for any abortion except when it is made known to the Federal entity or official to which funds are appropriated under this Act that such procedure is necessary to save the life of the mother or that the pregnancy is the result of an act of rape or incest.

Pub.L. No. 103–112 § 509 (1993). Plaintiffs argue that LSA–R.S. 40:1299.34.5 conflicts with the 1994 Hyde Amendment and that its enforcement should be enjoined. Under the Supremacy Clause of the United States Constitution, state laws conflicting with federal program requirements are invalid. *Townsend v. Swank,* 404 U.S. 282, 285–286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971); *Planned Parenthood Association of Utah v. Dandoy,* 810 F.2d 984, 988 (10th Cir.1987).

Several federal appellate and district courts have examined this identical issue with respect to Medicaid abortion reimbursement laws of other states. The question raised in cases decided by the Third Circuit, the Eighth Circuit, the Seventh Circuit and the First Circuit was whether states must fund abortions under their Medicaid plans when the Hyde Amendment provides funding for abortions under certain specific circumstances. These four federal appellate courts uniformly held that the intent of Congress in enacting the Hyde Amendment was to ensure that states fund abortions in those narrow instances where federal funds were available under the Hyde Amendments. *See, Roe v. Casey,* 623 F.2d 829 (3rd Cir.1980); *Hodgson v. Board of County Commissioners,* 614 F.2d 601 (8th Cir.1980), *Zbaraz v. Quern,* 596 F.2d 196 (7th Cir.1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir.1979), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979). All four of these Circuits found that Hyde Amendment was intended by the Congress to modify Title XIX. An earlier version of the Hyde Amendment passed on October 1, 1980, included a provision that no funds shall be used to perform abortions except where the mother's life is endangered or when the mother became pregnant through rape or incest, when the rape was reported with 72 hours to a law enforcement agency, "*Provided, however,* That the several States are and shall remain free not to fund abortions to the extent that they in their sole discretion deem appropriate." Pub.L. 96–369, § 101(c), 94 Stat. 1351, 1352–53 (1980) (emphasis in original). This language was deleted in versions of the amendment passed in later years, including the 1994 amendment. While not deciding this specific issue, the United States Supreme Court has held that withdrawal of federal funds relieves states of any obligation to provide abortions not federally funded. *Harris v. McRae,* 448 U.S. at 310–311, 100 S.Ct. at 2684–2685.

A federal district judge in Michigan has recently ruled that because Michigan law,

which provides for Medicaid abortion funding only in situations where the mother's life is endangered, conflicted with Title XIX, as modified by the 1994 Hyde Amendment, and that under the Supremacy Clause, the Michigan statute cannot stand.[1] The court ruled that Michigan was prohibited from enforcing its law while accepting federal funds pursuant to Title XIX. *Planned Parenthood Affiliates of Michigan v. John Engler,* 860 F.Supp. 406 (W.D.Mich.1994). The Michigan court found persuasive the reasoning of the four appellate courts considering the same issue.

Similarly, a federal district judge in Arkansas and a Montana state court judge have decided that statutes in their respective states which limit Medicaid abortion funding only to those instances to save the mother's life, and which make no provision allowing funding for abortions in cases where the pregnancy results from rape or incest, conflicts with applicable federal law and thus violates the Supremacy Clause of the United States Constitution. *Little Rock Family Planning Services, P.A. v. Thomas Dalton,* 860 F.Supp. 609 (E.D.Ark. Little Rock Div., 1994); *Jeanette R. v. State of Montana,* Cause No. BDV–94–811 (1st J.D.Ct.Montana) (June 1, 1994).

This Court, faced with the identical question respecting enforcement of Louisiana's law, has examined exhaustively the memoranda of the parties and the cases cited therein. Also carefully studied were the exhaustive opinions issued by the federal courts in Michigan and Arkansas and the state court in Montana, all of which are attached to this opinion as appendices. The Court is mindful of the fact that when this action was filed, the Louisiana Legislature was still in session and considered, and rejected, an amendment to LSA–R.S. 40:1299.34.5, to be triggered by court action, which would have extended Medicaid abortion funding only to those women whose lives are endangered by their pregnancies or who became pregnant through rape or incest.

---

**1.** The Michigan statute is, for all practical purposes, identical to the Louisiana statute at issue here.

Plaintiffs seek both a preliminary and a permanent injunction, arguing that they have established: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to them outweighs any damage an injunction might cause defendants; and (4) that the injunction will not undermine the public interest. *Landmark Land Co., Inc. v. OTS,* 990 F.2d 807, 810 (5th Cir.1993); *Lakedreams v. Taylor,* 932 F.2d 1103, 1107 (5th Cir.1991). Because the trial on the merits was consolidated with hearing of the preliminary injunction, the request for preliminary injunction is moot. The Court does note that the plaintiffs did call three witnesses to establish the requirement of a substantial threat of irreparable injury.[2] Upon request, and with the consent of all parties, the Court is now deciding the merits of this dispute, which is a question of law.

The scope of the permanent injunctive relief and declaratory judgment the plaintiffs seek is an injunction prohibiting the defendants, and their successors, from enforcing LSA–40:1299.34.5, a declaration that the State of Louisiana must return all federal Medicaid funding if it chooses not to comply with the mandate of the 1994 Hyde Amendment, and ordering them to pay for plaintiff Zora H.'s abortion.

■ The State of Louisiana advances a two-prong argument, first that neither Hope Medical Group for Women nor Dr. Okpalobi have standing to raise these issues because they have not alleged that they have suffered an "injury in fact," i.e., that they have performed abortion procedures on women who have become pregnant through rape or incest and have been denied Medicaid payment for these procedures. Dr. Okpalobi did file a Request for Admissions under Rule 36 of the Federal Rules of Civil Procedure of three separate statement, which the State admitted at the hearing and in writing in the record,

and a stipulation. The parties stipulated that Dr. Okpalobi is a duly-licensed physician practicing in this district who treats Medicaid-eligible patients and has been issued a Louisiana Medicaid identification number. The State admitted that Louisiana participates in the Federal Medicaid Program, that the Medicaid Director has been notified of the 1994 Hyde Amendment, and that Louisiana law prohibits the State in administering its Medicaid program from permitting public funds to be used to pay for abortions in cases where the patient became pregnant through rape or incest, unless the abortion is medically necessary to save the life of the patient.

■ The Court finds that Dr. Okpalobi, who already is a Medicaid Provider, and Hope Medical Group for Women, who provides family planning, abortion and counseling services for Medicaid-eligible women who live throughout the state of Louisiana, have standing to bring this action in that they have suffered sufficient "injury in fact." As noted in *Valley Forge v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), the plaintiff must demonstrate some "actual or threatened injury" in order to seek to have the statute invalidated. The State has admitted that its Medicaid program is prohibited from reimbursing either patients or medical care providers for abortions in circumstances when the patient became pregnant as a result of rape or incest. Thus, the economic injury is "threatened" and it would be futile and serve no useful purpose to require the plaintiffs to submit a bill to the state of Louisiana and have it denied. The State has, in effect, admitted that no reimbursement would be forthcoming if they submitted claims. Physicians have standing to assert the rights of their patients when they will benefit financially from federal Medicaid reimbursement for the services they provide. *See, Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct.

---

2. The three witnesses were experts who testified on abortion statistics in America and in the state of Louisiana, on the incidence of rape and the effect of rape, and pregnancy resulting from rape, on women, and on the medical effects on patients who are delayed in their obtaining their abortions because of the denial of Medicaid funding. The testimony did establish that if a woman becomes pregnant as a result of rape or incest and she is sufficiently impecunious that she meets Medicaid eligibility standards, the delay caused by a search for funds to obtain an abortion, particularly if the delay causes her pregnancy to advance to the second trimester, would be detrimental to her health.

2868, 49 L.Ed.2d 826 (1976), *on remand,* 538 F.2d 811 (8th Cir.1976).

■ The second argument propounded by the State is that the 1994 Hyde Amendment does not conflict with LSA–R.S. 40:1299.34.5 in that it *permits,* but does not *require* states to provide Medicaid funding for abortions when the procedure is necessary to save the life of the mother or when the pregnancy is the result of an act of rape or incest. Unfortunately for the State, this same argument has been advanced, and rejected, in the four federal appellate courts which have considered it, as well as in recent decisions in Michigan, Arkansas and Montana. The precedents established by the jurisprudence on this question are clear, direct, and persuasive.[3]

■ As to the request for a permanent injunction regarding enforcement of the law, based upon the precedents established by four appellate circuits, and the recent district court decisions, for the reasons cited, the Court finds that the plaintiffs are entitled to a permanent injunction enjoining defendants from enforcing LSA–R.S. 40:1299.34.5, which prohibits state Medicaid funding for abortions to terminate pregnancies when the mother became pregnant through acts of rape or incest, while accepting federal funds pursuant to Title XIX. As to the request for an order requiring the state to pay for Zora H.'s abortion, the Court finds that states are not **required** to accept Medicaid funds, but if they do, they must provide medically necessary services. Since the Louisiana legislature has obviously chosen not to accept federal funds under Title XIX, because they have refused to amend the law to provide funding in these very narrow circumstances, the Court cannot order the state to pay for Zora H.'s abortion. As to the request for declaratory judgment, the Court finds that the State of Louisiana cannot accept federal Medicaid funding, while refusing to comply with the 1994 Hyde Amendment and provide Medicaid reimbursement to eligible women who have abortions terminating pregnancies resulting from rape or incest. The United

States is not a party to this action and has requested no relief.

The Court regrets any adverse effects this ruling may have on the numerous Medicaid eligible persons seeking medically necessary services for all types of medical conditions. The Louisiana state legislature was afforded an opportunity to correct this problem to save federal funding for the many needy adults and children whose illnesses or injuries could be treated or cured through services funded through the Medicaid program. Nor does the Court express any personal opinion whatsoever on the moral or religious issues surrounding abortions. Indeed, such an opinion would be inconsistent with this Court's sworn duty as a judicial officer. Congress has mandated that Medicaid programs in those states which choose to accept federal funding provide abortion funding in three extremely limited circumstances, to protect the life of the mother or in cases where the mother became pregnant through rape or incest. Any state which accepts federal funds for Medicaid programs must also follow federal requirements and regulations or lose this funding.

Accordingly,

**IT IS ORDERED** that the motion of plaintiffs for a preliminary injunction be and is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

1) That the defendants be and are hereby enjoined from enforcing LSA–R.S. 40:1299.34.5, insofar as it prohibits state funding for abortions to terminate pregnancies resulting from acts of rape or incest, as required by Title XIX, modified by the Hyde Amendment, while at the same time accepting federal funds pursuant to Title XIX;

2) That Zora H. be denied a preliminary injunction ordering the state to reimburse her the cost of her abortion.

### *JUDGMENT*

Considering the record, the Reasons for Judgment entered this date, and the law, for the reasons assigned,

---

**3.** The State of Louisiana has not provided the Court with a case decided in its favor on the

question posed by this litigation.

**IT IS ORDERED, ADJUDGED, AND DECREED** that there be judgment herein as follows:

1) That the defendants EDWIN EDWARDS, Governor of the State of Louisiana, RICHARD IEYOUB, Attorney General of the State of Louisiana, and ROSE FORREST, Secretary of the Louisiana Department of Health and Hospitals, in their official capacities and their successors, be and are hereby enjoined from enforcing LSA–R.S. 40:1299.34.5, insofar as it prohibits state funding for abortions to terminate pregnancies resulting from acts of rape or incest, as required by Title XIX, modified by the Hyde Amendment, while at the same time accepting federal funds pursuant to Title XIX;

2) That Zora H. be denied a preliminary injunction ordering the state to reimburse her the cost of her abortion.