United States Court of Appeals,

Fifth Circuit.

No. 94-30445.

HOPE MEDICAL GROUP FOR WOMEN, on behalf of itself and the Medicaid-eligible women of the State of Louisiana to whom it provides health care, and Ifeanyi Charles Okpalobi, M.D., on behalf of himself and his Medicaid-eligible patients seeking abortions, et al., Plaintiffs-Appellees,

v.

Edwin EDWARDS, Governor of the State of Louisiana, et al., Defendants-Appellants.

Sept. 11, 1995.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This appeal centers on the complex issue of public funding for abortions. The plaintiffs, Hope Medical Group for Women and Dr. Ifeanyi Okpalobi, filed suit in federal district court on behalf of their Medicaid-eligible patients seeking to enjoin Louisiana from enforcing a state statute prohibiting the state's Medicaid program from funding abortions except in cases where an abortion is necessary to save the life of the mother. The district court issued an injunction prohibiting the state from enforcing the statute in so far as the statute prohibits funding for abortions to terminate pregnancies resulting from rape or incest. The state subsequently appealed. For the reasons explained below, we affirm.

I.

The plaintiffs' suit focusses on LA-R.S. 40:1299.34.5, which

1

prohibits Louisiana's state Medicaid program from offering abortions except when necessary to save the life of the mother. They contend that this restriction violates Title XIX of the Social Security Act and the 1994 version of the so-called Hyde Amendment. Title XIX establishes the Medicaid program, a jointly funded federal-state program designed to provide medical care for qualified individuals "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. States choosing to participate in the program receive federal funds appropriated under Title XIX and use these funds to finance the health care of state residents who meet the eligibility criteria set forth in the Act.

Although a state's participation in the Medicaid program is voluntary, participating states must abide by the requirements imposed by Title XIX and regulations issued by the Health Care Finance Administration (the "HCFA"), which is the federal agency created by the Act to administer the Medicaid program. *See Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 2513-14, 110 L.Ed.2d 455 (1990). Title XIX enumerates eight broad categories of medical services that state programs must provide to individuals classified as "categorically needy":[1]

(1) inpatient and outpatient hospital services;

(2) other laboratory or X-ray services;

(3) nursing facility services;

---

[1]42 U.S.C. § 1396a(a)(10) sets forth the eligibility criteria for determining whether an individual is "categorically needy."

(4) early and periodic screening, diagnostic and treatment services
    for recipients under the age of 21;

(5) family planning services and supplies;

(6) physicians' services and services furnished by a dentist;

(7) services furnished by a nurse-midwife;

(8) services furnished by a certified pediatric nurse practitioner
    or certified family nurse practitioner.

42 U.S.C. § 1396d(a).

The obligation of participating states to provide abortion services under Title XIX are circumscribed, however, by the so-called Hyde Amendment. In 1976, congress enacted the first version of the Hyde Amendment as a rider to an appropriations bill. The Hyde Amendment restricted the use of federal funds for abortion services under Title XIX. Although the specific language and scope of the Hyde Amendment changed over the years, the version in force until 1981 essentially limited funding for abortions to three cases: (1) where the mother's life was in danger, (2) where the abortion was to terminate a pregnancy resulting from rape or incest, and (3) where "severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term." *See* Pub.L. 95-205, 91 Stat. 1460 (Dec. 9, 1977).

From 1981 until 1993, Congress enacted an even stricter version of the Hyde Amendment which prohibited federal funds for abortions "except where the life of the mother would be endangered if the fetus were carried to term." *See eg.* Pub.L. No. 101-166, 103 Stat. 1159, 1177 (1989). Louisiana's abortion funding restriction mirrors the 1981-1993 version of the Hyde Amendment.

3

The Louisiana provision provides that:

> Notwithstanding any other provision of law to the contrary, no public funds, made available to any institution, board, commission, department, agency, official, or employee of the state of Louisiana, or of any local political subdivision thereof, whether such funds are made available by the government of the United States, the state of Louisiana, or of a local governmental subdivision, or from any other public source shall be used in any way for, to assist in, or to provide facilities for an abortion, *except when the abortion is medically necessary to prevent the death of the mother.*

LA-R.S. 40:1299.34.5 (emphasis added).

In 1993, Congress enacted a new version of the Hyde Amendment which, for the first time since 1981, permitted federal funds to be used for abortions to terminate pregnancies resulting from rape or incest. Pub.L. No. 103-112, 107 Stat. 1082 (1993). The 1994 version of the Hyde Amendment thus expanded the availability of funds for abortions under Title XIX. However, because Louisiana retained its restrictive abortion funding ban, the state's Medicaid program could not fund abortions in rape and incest cases even though federal funds were available under the 1994 version of the Hyde Amendment. The plaintiffs subsequently filed the present suit, arguing that Louisiana's abortion funding restriction violates Title XIX and the 1994 Hyde Amendment.

After a hearing, the district court ruled in favor of the plaintiffs and enjoined the state from enforcing LA-R.S. 40:1299.34.5's ban on funds for abortions in rape and incest cases as long as the state receives federal funds under Title XIX. The court held that the 1994 Hyde Amendment substantively modified states' obligations under Title XIX and that Congress' intent in enacting the Hyde Amendment "was to ensure that states fund

4

abortions in those narrow circumstances where federal funds were available under the Hyde Amendments." *Hope Medical Group v. Edwards,* 860 F.Supp. 1149, 1152 (E.D.La.1994). The court concluded that LA-R.S. 40:1299.34.5 conflicts with Title XIX "as amended" by the Hyde Amendment because it does not "provide Medicaid reimbursement to eligible women who have abortions terminating pregnancies resulting from rape or incest." *Id.* at 1154. The state timely appealed from the court's judgment enjoining the state from enforcing its abortion funding restrictions. Before addressing the merits of the district court's decision, however, we must first address whether a recent amendment to Louisiana's abortion funding statute moots this appeal.

II.

During a special legislative session following the district court's order enjoining enforcement of LA-R.S. 40:1299.34.5, the Louisiana legislature amended the provision. The amended provision permits public funds for abortions in cases of rape and incest as well as in cases where the abortion is needed to save the life of the mother. *See* LA-R.S. 40:1299.34.5(B). Although the parties' briefs on appeal do not address whether the amendment moots this appeal, one of the plaintiffs, Dr. Okpalobi, raised the mootness issue in a motion to dismiss the appeal and again during oral argument. Because the presence of a live case or controversy is a threshold jurisdictional requirement, we must address it even if it is not raised by the parties.

A case is moot for Article III purposes if the issues

5

presented are no longer live or the parties lack a legally cognizable interest in the outcome. *See Campanioni v. Barr,* 962 F.2d 461 (5th Cir.1992). An exception to the mootness doctrine exists in cases where a controversy is likely to recur, but may evade review. *See Henschen v. City of Houston,* 959 F.2d 584 (5th Cir.1992). After reviewing the amended version of LA-R.S. 40:1299.34.5, we conclude that the present case falls within this exception to the mootness doctrine.

The amended version of the funding restriction provides that public funding for abortions in rape and incest cases will only be available so long as "a decision or order of a court of competent jurisdiction" declares that the original version of the statute violates Title XIX. LA-R.S. 40:1299.34.5. The amended restriction thus allows abortion funding in rape and incest cases only if a court order continues to compel the state to do so. *Id.* Upon dissolution of the court order, the provision's exception for rape and incest cases becomes inapplicable and the original restriction prohibiting publicly-funded abortions except in cases where the mother's life is in danger becomes effective. *Id.*[2] The amended provision further provides that state officials "shall vigorously and expeditiously pursue judicial remedies seeking to obtain ... reversal" of any order compelling the state to fund abortions in

---

[2]The amendment divides the statutory restriction into two parts. Part A contains the original restriction prohibiting abortions except where the mother's life is in danger. Part B permits abortions in rape and incest cases. Part B of the statute is triggered only upon the entry of a court order holding Part A invalid. Once the court order is dissolved, Part B becomes ineffective.

rape and incest cases.  *See* LA-R.S. 40:1299.34.5.

The language of the revised statute clearly indicates that the Louisiana legislature amended the state's abortion funding restriction so that it could bring its Medicaid program into compliance with the district court's injunction.  The conditional language of the statute and the language directing state officials to seek a reversal of the injunction reveal the continued presence of a live controversy between the parties over the validity of LA-R.S. 40:1299.34.5.  In *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074-75, 71 L.Ed.2d 152 (1982), the Supreme Court held that the repeal of a city ordinance struck down as a violation of the First Amendment did not moot the appeal because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision" if the lower court's order enjoining the city from enforcing the ordinance was ever vacated.  In the present case, the plain language of the LA-R.S. 40:1299.34.5(D) manifests the state's intent to deny abortions in rape and incest cases as soon as the district court's injunction can be vacated.  Given the state's power to reenact the original version of its funding restriction and its stated intent to do so, we conclude that this appeal is not moot.  We therefore turn to the merits of the district court's injunction.

### III.

The plaintiffs raise essentially two arguments in support of the district court's injunction against the Louisiana abortion funding restriction.  First, they contend that the 1994 version of

7

the Hyde Amendment independently requires states to fund all abortions permitted by the amendment. Second, they alternatively argue that LA-R.S. 40:1299.34.5 violates Title XIX and its accompanying regulations because the provision unreasonably prohibits abortions without regard to medical necessity. We will consider both arguments in turn.

A.

The plaintiffs first contend that the 1994 Hyde Amendment substantively amends Title XIX by requiring state Medicaid programs to cover all abortions in the two categories of cases enumerated in the amendment: (1) abortions required to save the life of the mother, and (2) abortions to terminate pregnancies resulting from rape or incest. The plaintiffs' reading of the 1994 Hyde Amendment essentially eliminates the discretion of state Medicaid programs to place limitations on abortion services in cases of rape or incest and in cases where an abortion is necessary to save the life of the mother.

The plaintiffs' argument relies primarily on the legislative history of the Hyde Amendment. During the congressional floor debates preceding the passage of the 1994 Hyde Amendment, several legislators stated that a proposal to eliminate the amendment would result in states having to fund non-therapeutic abortions. For example, Senator Nickels explained that a repeal of the Hyde Amendment "would result in mandating that states pay for these abortions with state dollars." 139 Cong.Rec. S12,581 (Sept. 28, 1993). Likewise, Senator Hatch argued that "every state will be

8

required to provide matching funds for abortion on demand" if the Hyde Amendment were repealed. *Id.* at S12,588. According to the plaintiffs, these statements reveal Congress' understanding that states must fund all abortions for which federal funds are available.

The plaintiffs also point to the absence of the so-called "Bauman Amendment" language in the 1994 version of the Hyde Amendment. The Bauman Amendment was originally added to the 1979 version of the Hyde Amendment, and provided that "the several states are and shall remain free not to fund abortions to the extent that they in their sole discretion deem appropriate." The plaintiffs argue that the absence of this provision in the current version of the Hyde Amendment demonstrates that Congress intended to make Medicaid funding of abortions covered under the Hyde Amendment mandatory, and thus remove the states' discretion to limit abortion services provided through their Medicaid programs.

The defendants counter by arguing that the Hyde Amendment does not impose any independent substantive obligations on state Medicaid programs apart from Title XIX. They read the Hyde Amendment as a mere appropriations provision that restricts the use of federal funds for abortions except under limited circumstances. They argue that the amendment is purely permissive with regard to state funding of abortions under the two exceptions where federal funds are permitted by the Hyde Amendment.

Most of the cases interpreting the Hyde Amendment have generally focussed on whether the Hyde Amendment relieves state

Medicaid programs of Title XIX's requirements with respect to abortions for which federal funding is not available under the amendment. *See Preterm, Inc. v. Dukakis,* 591 F.2d 121, 125 (1st Cir.1979); *Roe v. Casey,* 623 F.2d 829 (3rd Cir.1980); *see also Harris v. McRae,* 448 U.S. 297, 309, 100 S.Ct. 2671, 2684, 65 L.Ed.2d 784 (1980) ("Title XIX does not require a participating State to include in its plan any services for which a subsequent Congress has withheld federal funding."). However, in *Hern v. Beye,* 57 F.3d 906 (10th Cir.1995), the Tenth Circuit addressed the converse question of whether the Hyde Amendment independently imposes an obligation on participating states to fund all abortions permitted by the amendment. The court concluded that the Hyde Amendment does not impose substantive obligations on State Medicaid programs:

> [T]he Hyde Amendment does *not* affect the states' underlying obligations imposed by Title XIX and federal Medicaid regulations. That is, although the Hyde Amendment relieves states' of having to fund abortions for which federal funding is unavailable, it does not alter states' obligations with respect to abortions for which federal funding *is* available.

*Id.* at 909 (emphasis in original). The court reasoned that state restrictions on abortion funding must be evaluated with reference to the requirements of Title XIX and its accompanying regulations, not the Hyde Amendment. *Id.*

We agree with the Tenth Circuit that the Hyde Amendment does not impose any independent obligations on states apart from the requirements of Title XIX. The plain meaning of a statute's language governs its construction unless so doing would clearly violate congressional intent or lead to absurd results. *See United*

10

*States v. Rodriguez-Rios,* 14 F.3d 1040, 1044 (5th Cir.1994).

Turning to the language of the Hyde Amendment and the case law applying the amendment, we agree with the defendants' argument that the Hyde Amendment does not create substantive obligations. On its face, the Hyde Amendment merely restricts the use of federal funds for abortions. The 1994 version of the amendment provides:

> None of the funds appropriated under this Act shall be expended for any abortion except when it is made known to the Federal entity or official to which funds are appropriated under this Act that such procedure is necessary to save the life of the mother or that the pregnancy is the result of an act of rape or incest.

Pub.L. No. 103-112, 107 Stat. 1082 (1993). Although the 1994 version of the Hyde Amendment permits the use of federal funds for abortions in rape and incest cases, the amendment contains no language obligating state Medicaid programs to fund abortions under these circumstances. Nor does the amendment purport to substantively amend Title XIX with respect to the authority of state Medicaid programs to tailor the scope of their medical coverage.

Neither the Hyde Amendment's legislative history nor the absence of the Bauman Amendment language persuade us to abandon the plain meaning of the statute. The excerpts of the congressional debate cited by the plaintiffs focussed on the implications of a proposal to remove the Hyde Amendment from the 1994 appropriations bill for health and human services programs. When viewed in this context, these statements appear merely to reflect the fear of the Hyde Amendment's proponents that a defeat of the amendment would result in states having to fund all medically necessary abortions

11

under Title XIX. These statements focus on states' obligations *under Title XIX,* not whether the Hyde Amendment imposes independent obligations on state Medicaid programs. They do not, therefore, suggest that the Hyde Amendment's language restricting abortion funding can be read to conversely require states to provide abortions permitted by the amendment.

We also disagree that the absence of the so-called Bauman Amendment similarly dictates that we abandon the plain meaning of the Hyde Amendment. During the Congressional debates preceding the passage of the Bauman Amendment in 1979, Representative Bauman explained that the intent of the Bauman Amendment was to modify states' obligations under Title XIX and to grant participating states the authority to eliminate abortion services from their Medicaid programs. Cong.Rec. 25425-35426 (Dec. 11, 1979). Thus, as with the debates over the Hyde Amendment, the debates over the Bauman Amendment centered on the obligations imposed by Title XIX, not the Hyde Amendment. Indeed, Representative Bauman explained that the purpose of the Hyde Amendment "has been from the beginning to restrict Federal funding and not in any way to place burdens on the rights of States." *Id.* at 35426.

We therefore follow *Hern* in holding that the Hyde Amendment does not create any independent obligations on states participating in the Medicaid Program to fund abortions permitted by the amendment. Accordingly, we must now turn to the text of Title XIX and its accompanying regulations to determine whether the Louisiana funding restriction violates these requirements.

12

B.

Whether Louisiana's funding restriction violates Title XIX turns on the extent to which the Act affords participating states the discretion to place restrictions on the medical services offered through their Medicaid programs. Although Title XIX does not specifically include abortion as a mandatory service, the parties concede that abortion services fall under several of the eight broad categories of medical services mandated by the Act, including inpatient hospital services, outpatient hospital services, physician's services, and family planning services. *See* 42 U.S.C. § 1396d(a). The plaintiffs contend that abortion services are therefore mandated by Title XIX and that Louisiana's funding restriction violates the Act because it generally prohibits abortions except in cases where the mother's life is in danger.

Title XIX "confers broad discretion on the states to adopt standards for determining the extent of medical assistance" provided through their Medicaid programs. *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1977). However, states' discretion to limit the scope of the medical services offered through their Medicaid programs is subject to important restrictions. Title XIX specifically provides that participating states must establish "reasonable standards" that are "consistent with the objectives" of the Act. 42 U.S.C. § 1396a(a)(17). Some courts have read this provision as mandating that states must cover all medical procedures certified as "medically necessary" by a recipient's physician. *See Weaver v. Reagen,* 886 F.2d 194 (8th

13

Cir.1989); *Pinneke v. Preisser,* 623 F.2d 546, 548 n. 2 (8th Cir.1980). Other courts have declined to impose such a strict "medical necessity" restriction on states' discretion. Instead, they read Title XIX as granting states some discretion to limit medical services based on their judgment as to whether a particular medical service is medically necessary. *See Preterm,* 591 F.2d at 125.[3] Under this approach, a state program's decision to limit a service based on the degree of medical necessity is subject only to Title XIX's requirement that the limitation must be reasonable. *Id.*

HCFA regulations promulgated under Title XIX provide additional guidance in assessing the reasonableness of a state restriction on the medical services offered through its Medicaid program. These regulations provide that:

> (b) Each [medical] service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.
>
> (c) The Medicaid agency may not *arbitrarily* deny or reduce the amount, duration, or scope of a required service ... to an otherwise eligible recipient *solely because of the diagnosis, type of illness or condition.*
>
> (d) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures.

42 C.F.R. § 440.230 (emphasis added). A participating state may, therefore, choose to limit the provision of particular medical

---

[3]In *Preterm,* the court rejected the argument that a state Medicaid program must cover any medical procedure certified by a doctor as medically necessary. Rather, the court reasoned that state legislatures may make "the macro-decision ... that only certain kinds of medical assistance are deemed sufficiently necessary to come under the coverage of its plan." *Id.* at 125.

14

procedures or treatments as long as the restriction complies with § 440.230.

Almost all the federal circuit cases addressing whether state abortion funding restrictions violate Title XIX have held that state restrictions similar to LA-R.S. 40:1299.34.5 violate Title XIX. *See Preterm,* 591 F.2d at 125; *Casey,* 623 F.2d 829; *Hodgson v. Board of County Comm'rs, County of Hennepin,* 614 F.2d 601, 608 (8th Cir.1980); *Zbaraz v. Quern,* 596 F.2d 196, 199 (7th Cir.), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Hern,* 57 F.3d at 909-10; *Little Rock Family Planning Services v. Dalton,* 60 F.3d 497 (8th Cir.1995).[4] In many of these cases, the state abortion funding restrictions were actually less restrictive than LA-R.S. 40:1299.34.5 because they allowed funds for abortions in cases of rape or incest. Although each of these courts offer slightly different rationales for holding the restrictions invalid, they each generally arrive at the same conclusion: the state restrictions were inconsistent with the basic objective of Title XIX to provide necessary medical services to eligible recipients.

In *Preterm,* the First Circuit struck down a Massachusetts abortion funding restriction that was less restrictive that the Louisiana restriction at issue in this case. The Massachusetts statute prohibited the state Medicaid program from funding abortions except in cases where the mother's life was in danger and

---

[4]Recent federal district court decisions have similarly held that such restrictions are invalid. *See Planned Parenthood v. Wright,* No. 94 C 6886, 1994 WL 750638 (N.D.Ill. Dec. 6, 1994); *Planned Parenthood v. Engler,* 860 F.Supp. 406 (W.D.Mich.1994); *Planned Parenthood v. Blouke,* 858 F.Supp. 137 (D.Mont.1994).

15

where the pregnancy resulted from rape or incest. 591 F.2d at 126-127. The plaintiffs in *Preterm* argued that the state's funding restriction violated Title XIX because it did not permit funding for abortions in cases where the health of the mother was at risk.[5]

Although the First Circuit acknowledged that the state's abortion funding restriction was arguably a limitation based on medical necessity, the court concluded that restrictions which limit medical services "to life and death situations" and cases of rape and incest contravene the objectives of the Act. *Id.* According to the court, the state funding restriction contravened the objectives of Title XIX in two respects. First, the court reasoned that Title XIX's objective of providing needed medical care is broader than the stark "life and death" restriction embodied in the Massachusetts provision. The court concluded that the state's restriction thus "crossed the line between permissible discrimination based on degree of need and entered into forbidden discrimination based on medical condition." *Id.* at 126. The court further held that the restriction contravened Title XIX by failing to incorporate physician input into whether or not a given abortion procedure is medically necessary. According to the court, Title XIX "provides for a central role for the physician in determining proper treatment." *Id.* at 127.

In *Hodgson,* the Eighth Circuit similarly held that a Minnesota

---

[5]At the time, the Hyde Amendment permitted funds to be used for abortions in cases where the mother would suffer severe and long-lasting physical damage if forced to carry the pregnancy to term. *See* Pub.L. 95-205, 91 Stat. 1460 (Dec. 9, 1977).

16

statute limiting Medicaid-funded abortions was invalid.  614 F.2d at 608.  As with the Massachusetts statute, the Minnesota statute limited abortions offered through its Medicaid program to cases where the abortion was necessary to save the life of the mother and in cases of rape or incest.  The court concluded that Minnesota's funding restriction was arbitrary because the state's Medicaid program subsidized "health-sustaining" services in general, but, in the case of abortion, subsidized abortion procedures only if they were "life-sustaining."  *Id.*  The court concluded that the state's restriction on abortion funding was thus "not in accordance with a uniform standard of medical need."  *Id.*

Both *Preterm* and *Hodgson* were decided against the backdrop of the pre-1981 version of the Hyde Amendment, which, like the 1994 version of the amendment, permitted federal funding for abortions in cases of rape and incest.  The Tenth Circuit, however, recently addressed this precise issue against the backdrop of the 1994 version of the Hyde Amendment.  In *Hern,* the court ruled that a Colorado statute contravened Title XIX because it restricted abortions provided through the state's Medicaid program to cases where an abortion was necessary to save the life of the mother. Like the Louisiana abortion funding restriction, the Colorado restriction did not provide funds for abortions in cases of rape or incest.  The court held that the statute contravened Title XIX because it "categorically denies coverage for a specific, medically necessary procedure except in those rare instances when a patient's life is at stake."  *Id.* at 911.  The court reasoned that this

restriction was antithetical to a basic objective of Title XIX—"to provide necessary medical services to qualified individuals." *Id.* at 910-11. Therefore, *Hern* essentially tracks the reasoning of *Hodgson* and *Preterm* in holding that the Colorado funding restriction violated Title XIX because it was an arbitrary restriction based solely on a recipient's condition or diagnosis.

We agree with the reasoning of these decisions and hold that Louisiana's abortion funding restriction similarly violates Title XIX. The text of Title XIX reveals that the Medicaid program is not limited to merely providing medical services necessary to save patients' lives. Title XIX contains no language suggesting that the medical services mandated by the Act are mandatory only in life and death situations. Indeed, Title XIX specifically requires participating states to provide preventive medical services, such as prenatal care, dental care, and "periodic screening, diagnostic and treatment services" for eligible recipients under age 21. *See* 42 U.S.C. § 1396d(a)(4)-(5). Title XIX also requires state Medicaid programs to provide outpatient hospital services. *See* 42 U.S.C. § 1396d(a)(2)(A). That Title XIX requires states to provide medical services not typically associated with life and death situations manifests the broad scope of the program. As noted in *Hodgson,* the broad objective of Title XIX is to provide "health-sustaining" medical services to eligible recipients, not merely "life-sustaining" services. 614 F.2d at 608.

Given the broad scope of Title XIX, Louisiana's funding restriction is inconsistent with the objectives of the Act because

18

the restriction categorically limits abortions offered through the state's Medicaid program to life and death situations without regard to the medical necessity of abortions in rape and incest cases. During the hearing, the plaintiffs produced evidence supporting their claim that abortions in rape and incest cases are often medically necessary even though the mother's life might not be in danger. The plaintiffs' evidence included research reports and expert testimony detailing the mental and physical health problems attendant to pregnancies resulting from rape or incest. The plaintiffs also introduced a December 1993 letter sent by the HCFA to the directors of each state Medicaid program. The letter stated that, in the opinion of the HCFA, Title XIX now requires participating states to fund medically necessary abortions in rape and incest cases because of the expansion of funding under the 1994 version of the Hyde Amendment. This language suggests that, in at least some cases, abortions in cases of rape or incest are medically necessary and must therefore be provided by state Medicaid programs under Title XIX.[6]

The defendants failed to controvert the plaintiffs' evidence that abortions in rape and incest cases are frequently medically

---

[6]The HCFA letter also suggests that abortions in rape and incest cases are "per se" medically necessary and, therefore, must be provided by states without restriction. We need not, however, decide whether this language in the HCFA directive purports to totally eliminate states' discretion to restrict abortions in rape and incest cases. Regardless of whether the directive can be read to eliminate states' discretion over abortions in rape and incest cases, Louisiana's restriction violates Title XIX because it categorically limits Medicaid-funded abortions to life and death situations.

necessary. Indeed, the defendants do not dispute the plaintiffs' argument that Louisiana's abortion funding restriction is not grounded on the health or medical needs of Title XIX patients. Although Title XIX and 42 C.F.R. § 440.230 allow state Medicaid programs to adopt appropriate limits based on medical necessity, such restrictions must be consistent with the Act's objective of providing a broad range of health-sustaining services. For example, restrictions that limit the provision of medical services to life and death cases may be appropriate where the medical benefits of certain procedures or treatments are significantly outweighed by their risks to patients' health. Such a restriction would be consistent with promoting the health of Title XIX patients. Restrictions might also be appropriate where the state legislature or the state Medicaid program determines that a medical treatment or procedure is not medically necessary. *See Preterm,* 591 F.2d at 125.[7] However, the defendants offer no grounds for concluding that abortions in rape and incest cases are never medically necessary.

---

[7]*See also Mother Doe et al. v. Stewart,* No. 74-3197 (E.D.La. Feb. 20, 1976) (Ainsworth, J.). In *Mother Doe,* a three judge district court upheld a Louisiana statute that prohibited "non-therapeutic" abortions. The court held that a state can, consistent with Title XIX, prohibit abortions that are not medically necessary:

> [I]n view of Congress' recognition of a State's limited resources, its attitude toward abortions and its silence on the subject, we believe that Congress did not intend that States should pay for non-medically necessary abortions as necessary medical expenses when States are not required to fund other medically non-necessary services such as elective cosmetic surgery.

We also disagree with the defendants' contention that Louisiana's interest in encouraging childbirth over abortion is sufficient to sustain the state's abortion funding restriction. The defendants' argument relies primarily on language taken from *Beal,* 432 U.S. at 445-446, 97 S.Ct. at 2371-2372. In *Beal,* the Supreme Court upheld a state statute that prohibited the state's Medicaid program from offering *non-therapeutic* abortions. The court reasoned that states had a legitimate interest in encouraging childbirth, and that this interest is sufficiently compelling to support state restrictions on Medicaid funding for non-therapeutic abortions:

> The respondents point to nothing in either the language or the legislative history of Title XIX that suggests that it is unreasonable for a participating State to further this unquestionably strong and legitimate interest in encouraging normal childbirth. Absent such a showing, we will not presume that Congress intended to condition a State's participation in the Medicaid program on its willingness to undercut this important interest by subsidizing the costs of non-therapeutic abortions.

*Id.* at 446, 97 S.Ct. at 2371. The defendants contend that the Court's reasoning in *Beal* supports Louisiana's funding restriction even though, unlike the restriction in *Beal,* the Louisiana provision also prohibits *therapeutic* abortions except in cases where the mother's life is in danger.

Although we agree that Louisiana's interest in encouraging normal childbirth is legitimate and supports restrictions on non-therapeutic abortions, we do not agree that this interest is sufficient to sustain the state's present abortion funding restriction. As we previously explained, one of the principal

21

objectives of Title XIX is the provision of necessary medical services to eligible recipients. A state cannot, therefore, adopt an abortion funding restriction based solely on its interest in encouraging childbirth without taking the medical necessity of the procedure into account.

In sum, we conclude that LA-R.S. 40:1299.34.5 violates the requirements of Title XIX because it categorically prohibits funding for abortions in cases of rape or incest without regard to whether the procedures might be medically necessary. The defendants offer no medical basis for restricting abortions to life and death situations, nor do they contest the plaintiffs' position that abortions in rape and incest cases are often medically necessary. The state's abortion funding restriction is therefore inconsistent with the broad objective of Title XIX to provide needed medical care to qualified recipients. Accordingly, the district court did not err in enjoining the state from enforcing LA-R.S. 40:1299.34.5 as long as the state receives funds under Title XIX.

IV.

For the reasons stated above, we AFFIRM the district court's order enjoining the defendants from enforcing LA-R.S. 40:1299.34.5's ban on funds for abortions in rape and incest cases as long as the state receives federal funds under Title XIX.

AFFIRMED.

GARWOOD, Circuit Judge, concurring:

I concur in Judge Davis's thoughtful and well-crafted opinion,

22

and append this writing merely to underscore my understanding as to what we do not hold or opine respecting in two particular areas.

While I agree that Louisiana's "unquestionably strong and legitimate interest in encouraging normal childbirth," *Beal v. Doe,* 432 U.S. 438 at 446, 97 S.Ct. 2366 at 2371 (1977), is not sufficient justification for the State, as a Title XIX participant, to categorically deny abortion funding to all Medicaid-eligible patients who are victims of rape or incest "without taking the medical necessity of the procedure into account" (majority op. p. 5687), I believe that interest may properly be taken into account by the state in determining the character and degree of medical necessity, in cases where the mother's life is not at stake, which will be required in order to justify provision of abortion services. In other words, the interest in preserving human life is a rational justification for a participating state to require greater and more concrete and verifiable medical necessity in cases of abortion than in cases of procedures which do not terminate human life. I do not understand Judge Davis's opinion to hold or opine to the contrary. Nor do I understand us to address the question of just what character or degree of medical necessity and demonstration thereof a participating state may lawfully require before funding an abortion for a Medicaid-eligible patient whose pregnancy results from rape or incest.[1]

---

[1]The three-judge court in *Mother Doe et al. v. Stewart,* No. 74-3197 (E.D.La. Feb. 20, 1976), held that Louisiana's then policy of providing abortion funding for Medicaid-eligible patients *only* where *either* necessary to save the mother's life *or* "necessary to prevent serious and permanent impairment to the

23

Second, the State of Louisiana in this appeal has taken an essentially all or nothing position, namely that it is entitled to participate in Title XIX while at the same time declining to ever provide Medicaid-eligible patients any funding for *any* abortions save *only* those necessary to save the mother's life. The State's only complaint of the district court's decree is that the decree conflicts with this supposed right of the State. We are thus not faced with issues of the kind raised by Judge Bowman's well-reasoned dissent in respect to the form of the district court's decree in *Little Rock Family Planning Services v. Dalton,* 60 F.3d 497 (8th Cir.1995). The form of the decree here has not been put in issue on this appeal,[2] and I do not understand Judge Davis's opinion to address that matter.

---

physical health of the mother" was "consistent with the Social Security Act" (*id.* at 16, 17). *Mother Doe* was summarily "affirmed" by the Supreme Court. *Doe v. Stewart,* 433 U.S. 901, 97 S.Ct. 2963, 53 L.Ed.2d 1086 (1977) (per curiam; Justices Brennan, Marshall, and Blackmun dissenting). The Supreme Court jurisdictional statement of the plaintiffs-appellants in *Doe v. Stewart* lists as the second of the two "Questions Presented," "Does the Medicaid policy of the State of Louisiana, which provides payment for only therapeutic abortions, as defined by state law, violate the requirements of the Social Security Act of 1935, as amended?", and explains that "the Louisiana Medicaid Program would not pay for [plaintiff-appellant] Jane Doe's abortion because her pregnancy had not been medically determined to be seriously threatening to her life or her physical health." *Mother Doe* involved an unmarried minor's pregnancy not claimed to have resulted from rape or incest.

[2]All the State has placed in issue on this appeal is the claim that LA.R.S. 40:1299.34.5's restriction of any abortion funding to instances where necessary to save the mother's life is wholly valid notwithstanding Louisiana's continued participation in Title XIX.