Dear Mr. Clouatre:
You have asked our opinion whether the school board may pay for all the back "Medicare" contributions of employees hired prior to 1986 who arenot currently covered by "Medicare" but who, under federal law, can voteto have coverage and to have it for five years retroactively from thetime of coverage. This payment would be a one-time payment only for theperiod of retroactivity for these particular employees alone;subsequently, the premium payments would be as for all employees —that is, contributions by both the school board as employer and theemployees in proportionate shares according to the "Medicare" rules.
"Medicare" is a federal-state insurance program providing health insurance coverage for the elderly. It is primarily administered by the U.S. Social Security Administration and secondarily administered by the state Department of Health and Hospitals. Although what services are precisely covered by the program depends on the state Medicare plan, the whole Medicare program is governed by federal law, which supersedes state constitution and law. The state plan must comply with federal law. See,for example, Hope Medical Group for Women, etc., et al. v. Edwards,No. 94-30445, 63 F.3d 418 (U.S. App.5th Cir. 1995).
 La. Const. (1974) art. 7, 14(B)(2) expressly authorizes contributionsof public funds to pension and insurance programs for the benefit ofpublic employees. Therefore, contributing public funds for this purposedoes not, in our opinion, violate La. Const. (1974) art. 7, 14.
As to the problem of contributing a greater proportion or all of the costs of the premiums for some employees, after contributing a lesser proportion for other employees, we do not have enough details from your request to know whether it can be done safely or not; the details might have to include what employees are involved, what their salaries are, and what might be the ultimate effect of the payments. We think that Opinion 02-0300, a copy of which is enclosed, although applicable to city and parish employees, is sufficient to explain the major problems involved and what, in our opinion, must be done for it to comply with constitution and law.
Trusting this opinion has answered the question you asked of us, we remain
Very truly yours,
RICHARD P. IEYOUB
Attorney General
 By _____________________________ THOMAS S. HALLIGAN Assistant Attorney General
Encl.
OPINION NUMBER 02-0300
January 9, 2003
9 CIVIL SERVICE COMMISSION 15A CONSTITUTIONAL LAW 71-1-A MUNICIPALITIES — City Parish Charter 71-1-1 MUNICIPAL FIRE POLICE CIVIL SERVICE 84 PARISHES
Parish's paying a lower paid employee a higher contribution toward group health insurance premium than a higher paid employee and/or mandating enrollment in the group health insurance program as a condition of employment might be legally possible, as long as the resultant differentiations in pay is reasonable in light of their governmental purpose and the procedures used to adopt such a plan comply with the requirements for establishing or maintaining a classification pay plan for civil service employees.
Mr. Michael E. Ponder Parish Attorney Parish of East Baton Rouge 222 St. Louis Street Post Office Box 1471 Baton Rouge, LA 70821
Dear Mr. Ponder:
As outlined in your request, you seek our opinion on the following issues:
 1. Can the City-Parish mandate health insurance enrollment as a condition of employment for new hires?
 2. Can the City-Parish pay a greater portion of health insurance premiums for lower paid employees than what is paid for higher paid employees?
As you already know, the City-Parish can pay up to 100% of the premiums for group health (including dental) insurance coverage for its employees, officials and retirees. The payment by the City-Parish for these premiums is generally considered compensation for the labor that the employee gives in his employment[1]. Retirees constitute a different class from active employees such that a political subdivision may pay a higher premium for active employees than it does for retirees without violating equal protection provisions of the state and federal constitutions[2].
In the situation contemplated by your request, however, different treatment with respect to group health insurance premium payments and, therefore, compensation would be given to various active employees. In our opinion, such a situation invokes questions under constitutional provisions dealing with equal protection and maintaining the classified civil service classification pay plan[3]. The reasons for such a conclusion are that differentiating the group health insurance premiums among employees, in effect, changes their compensation differential with respect to one another.
For example, under the current system where coverage is optional and the premium contribution by the City-Parish is the same percentage for each employee, the employee is promised a set salary at that classification and longevity. He gets that regardless of whether he participates in the City-Parish's health insurance program, and the offer to join the City-Parish's health insurance program contains exactly the same percentage for each and every employee (although different coverage plans may apply to them, depending upon their factual, personal circumstances). Each and every employee may opt to join the health insurance program, pay part of the premium for that insurance, and obtain both health insurance coverage and, in addition, a contribution toward the premiums from the City-Parish. But he may also opt not to join; the choice is his, if he does not join, he continues to receive his set salary according to the classification pay plan.
However, when one employee is offered a greater contribution toward the premiums than another employee for the same coverage, he is offered something that the other employee is not offered in compensation for his labor. If an employee making $19,000 per annum, for example, is offered the payment of $200 per month toward his insurance premium, it changes his overall compensation to $21,400 ($19,000 + $2,400), while another employee, making $20,000 per annum, may be offered only $100 per month toward his insurance premium, totaling $21,200 ($20,000 + $1,200). The original differentiation between the two classifications was $1,000 per annum ($20,000 minus $19,000), but the different insurance contributions then creates a new differentiation between the classified positions and actually changes which of the two employees makes higher total compensation.
And this difference is especially so in the situation where an employee is required to join the City-Parish group health insurance program as a condition of employment. It simply means that not only the new differentiation is an offer, it also necessarily becomes an accomplished fact. Moreover, in the case where an employee already has health insurance coverage through his or her spouse, with a coordination-of-benefits clause in the program, joining the City-Parish group health insurance program will probably result in a loss of salary otherwise earned, since there will be new premiums to pay without a corresponding proportion of new benefits.
Nevertheless, a kind of plan like this one in theory might be constructed that is legally possible, in our opinion, as long as it meets certain requirements. First, any new differentiation in the salary structure of the civil service system must meet equal protection guarantees. The Equal Protection clauses of the state and federal constitutions do not prohibit such differentiations (provided they are not based on race, religion, religious ideas, beliefs, or affiliations, or birth, age, sex, culture, physical condition, or political ideas or affiliations) but only require that they be reasonable in light of the governmental purpose for which they were enacted[4]. Indeed, the differentiations in the current pay plan are based on the classification of different types of work or labor required and must be reasonable in light of same. Likewise, the state income tax is also graduated, with persons who receive lower incomes being taxed at lower rates than persons who receive higher incomes. Again, however, the differentials must be reasonable. It might not be reasonable to pay the highest contribution toward premiums for the highest paid employees and the lowest contribution toward premiums for the lowest paid employees.
Also, if the current classified pay plan is reasonably based on the type of work or labor being performed by the different classifications, then it might not be reasonable to move one employee whose compensation is currently behind another employee ahead of that other employee by giving him a larger health insurance premium contribution. Accordingly, through a certain range of salaries between the maximum contribution toward health insurance premiums and the minimum, there might have to be a graduated series of smaller differences between contribution percentages.
Also, we will not comment on changing the conditions of employment for new hires only, while leaving already-employed employees in their current status. Sometimes, but perhaps not always, a "grandfather" clause is reasonable. All of the circumstances and legal requirements have to be reviewed.
Because such policies as those proposed in your request effectively change the classification pay plan for the City-Parish and/or change the conditions of employment, it is also our opinion that the same procedures for adopting or modifying the City-Parish's classification pay plan must be complied with before implementing such policies[5].
We trust that this adequately responds to your request. If you have any questions, please contact my office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By: ____________________ Tina Vicari Grant Assistant Attorney General
RPI/TVG/dam
DATE RELEASED: January 9, 2003
[1] Attorney General Opinion Nos. 88-480, No. 91-589B, No. 92-547, No. 96-153, No. 97-409, and No. 99-185
[2] Attorney General Opinion No. 97-234
[3] See La. Const. (1974) Arts. 1, § 3 and City-Parish "Home Rule" Charter.
[4] Tomas v. Conco Food Distributors, 97-426 (La.App. 3rd Cir. 10/22/97), at p. 7, 702 So.2d 944, 948. Accord: State v. Fleury, 01-KA-0871 (La. 10/16/2001), 799 So.2d 468.
[5] Cf. La. Const. (1974) art. 10, read together with the City-Parish "Home Rule" Charter